# Bayley's Appeal.

1. A testator gave the interest of one-third of his estate to his wife for life, and after her death the principal to go to his sons. The trustee holding the fund advanced to the sons their shares, taking a mortgage conditioned for the payment of the widow's interest. The mortgaged property was sold by the sheriff and assignees, and the trustee received a less sum from those sources than he had advanced. After the widow's death the remaining part of the fund being in the Orphans' Court for distribution and the interest on the deficiency being unpaid, it was *held* that the estate of the widow was entitled to receive the arrearages out of the fund, before the sons received any part as legatees.

2. The Orphans' Court in its jurisdiction over executors and other trustees is a court of equity, and adopts the rules and principles of equity as their guide in the settlement of accounts.

January 20th 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

[Bayley's Appeal.]

' Appeal from the decree of the Orphans' Court of *Bucks county*: in the matter of the account of John Yardley, trustee, &c., of Rachel Bayley, deceased: No. 190, to January Term 1869.

This appeal was by Peter V. Bayley, administrator, &c., of Edward Bayley, deceased, from the decree of the court distributing the fund in the hands of the above-named trustee. The facts of the case, so far as they are shown by the report of the auditor, James B. Lambert, Esq., and the opinion of his honor, Judge Chapman, appear to be as follows:—

Samuel Bayley died in 1817, leaving a will which was proved October 25th of that year. By the will, Rachel Bayley, widow of the testator, was to receive the interest of one-third of the estate during life, and after her decease the principal was to be equally divided between Edward, Peter V. and Samuel H. Bayley, sons of the testator. The account of the executor, filed October 15th 1821, showed in his hands a balance of $14,358.78. Some time prior to April 4th 1831, Dr. Phineas Jenks became trustee of the fund thus bequeathed, and lent or advanced $1900 of it to Samuel H. Bayley, all of which was lost. At that date he lent or advanced to Edward and Peter V. Bayley each $1380.84, taking as security the bond and mortgage of each for that sum, conditioned for the payment of the interest (or as it is styled in the mortgages, "annuity") on those sums to the widow annually during life. In 1833 the real estate of Edward was taken in execution and sold, and but $1005.73 realized upon his mortgage; and in 1834 that of Peter was also sold in the same manner and but $787.94 realized upon the mortgage given by him. On the 12th of November 1834, the Court of Common Pleas made a decree directing the payment of the sum raised on the mortgage given by Edward to Dr. Phineas Jenks as trustee of the widow, and on the 17th of that month he received and receipted for it, and also for the amount made on the mortgage given by Peter. He retained the funds thus raised until his decease, when on petition of Rachel Bayley, the Orphans' Court appointed John Yardley, Esq., as his successor, and the money was paid to him out of Dr. Jenks' estate.

Peter V. Bayley made an assignment for the benefit of his creditors, and on a distribution of his estate Dr. Jenks as trustee aforesaid, received a dividend of $71.75 on the sum of $326.61, the balance due on the mortgage.

Edward Bayley died in 1856, and administration of his estate was granted to Peter V. Bayley. Peter V. Bayley, on the 16th of October 1861, assigned all his interest in his father's estate to his son, Edward Bayley. Rachel Bayley, the widow, died May 16th 1866, leaving a will, of which William Buckman was appointed executor. After her death Yardley filed his account as trustee, showing in his hands a balance of $1789.44. The exe-

cutor of Mrs. Bayley claimed so much of the fund as would discharge the arrearages of interest due her on the difference between the sum advanced to the two sons and the amount realized from their estates by the trustee. The representatives of the two sons alleged that the fund for distribution was the estate of Samuel Bayley, the testator, of which they were the legatees; that the widow was merely their creditor, and could not secure her debt from a fund payable to them unless she had attached it under a judgment recovered against them; they also set up the Statute of Limitations as a bar against the debt due the widow. The auditor adopted the views presented on behalf of the sons, and distributed the fund between their representatives.

The executor of Rachel Bayley filed exceptions to the report of the auditor. Judge Chapman delivered the opinion of the court, which, after recapitulating the facts, was as follows:—

"Has the widow's executor, she having died in May 1866, a right to this fund in order to make up the deficiencies in the yearly payments to which she was entitled under the will of her husband, and by the mortgages and bonds of Peter and Edward? If he has, these deficiencies will about absorb the whole fund. This sum of $4660 was advanced to the three brothers, being about the one-third of the estate, and had the interest been paid on said sum up to the widow's death, they would have been entitled to retain it; but the will provided that she should have the interest during her life upon that amount, and she did not receive it. If the fund be still the estate of Samuel Bayley, it would seem to be most inequitable that his gift for her support should be defeated or impaired by the defalcations of the sons, and they be admitted to succeed to the vestige left for her support, because it must be recognised as principal. The whole loss would thus be cast upon her, while the will intended she should be provided for out of the one-third of the estate. Had the loss occurred through the insolvency of strangers, she must have borne her part; but having arisen by their acts and shortcomings, their claim comes with a bad grace and can only be supported because of some legal or technical obstacle that stands in her way or that of the representatives of her estate.

"It is admitted she has not received her right under the will, and consequently the presumption of payment arising from the lapse of time cannot prevail. The Statute of Limitations has no application. I have said this money was advanced to the sons; the auditor says it was loaned, but the conditions in the bonds do not stipulate for its return. It was paid by the executors to the trustee, and what may have been the parol understanding between him and the sons we are not advised, but certain it is, when in the hands of the trustee it continued to be the estate of Samuel Bayley. He advanced it to them without security of any kind.

[Bayley's Appeal.]

They certainly had no right to receive it, and, though it could not be identified, it was proper to follow it in their hands. This was the view taken by the Court of Common Pleas when they decreed the balance of proceeds of sale to be restored to the trustee, which steps recognised the fund thus decreed to the trustee as a part of the estate of Samuel Bayley, and that decree remains undisturbed. We have then this fund for distribution. Can it be pretended, that when the balance arising from the sales of the sons' property, had there then been arrears of interest which they had failed to pay, the court could not have directed such arrears to be paid out of the funds without sequestering it? I see no reason why the whole fund might not then have been absorbed in the discharge of the arrears, otherwise the will of the testator could not have been satisfied. Her claim could only have been defeated by a paramount claim of the sons, and they could have none such when it came in conflict with the intentions of the testator. The error, it seems to me, consists in steadily adhering to the idea that the balance paid to the trustee, must be deemed principal, upon which the widow had no claim, when those who are now demanding it are the parties who reduced it to its present dimensions. But the balance of the fund was ordered back to the trustee in obedience to the intention of the testator, and if the whole could then have been absorbed in the payment of arrears, it having thus been restored for her security and indemnification, the whole was pledged, whether deemed principal or interest, to carry out such intentions. These are paramount to the claim of defaulting legatees, and their misfeasance or loss should not now avail them to throw it upon her. It may be said that when they received the fund a trust devolved upon them, irrespective of their obligations by the bonds and mortgages. They were bound to account for the whole interest, and nothing is clearer than that a trustee is responsible for loss occasioned by his own neglect or mismanagement. It may be also said when Dr. Jenks paid this money to the sons without sufficient security it was a breach of trust, and whether they be deemed trustees or not, if they derived a benefit from this breach of trust the loss may eventually be cast on them: Merryweather v. Nixan, 8 T. R. 186; Lingard v. Bromley, 1 Ves. & B. 114; Seddon v. Cornell, 10 Sim. 79, 86; Hill on Trustees, 761 and notes; and when could there be a more appropriate time to cast the loss upon them than when they come to claim this fund which is now under the control of the court? They not only reap the benefit of this abuse of the trust by getting possession of the fund before they were entitled to it, but consumed and appropriated a large portion of it to their own use, from which no interest could accrue, to the yearly loss of the *cestui que trust*. It does not appear the widow was a party to the act of payment of the principal to the sons without security,

though it is true she took bonds and mortgages to secure her yearly interest, which turned out to be ineffectual for the purpose. She is now deceased, but, under the circumstances, it would have been perfectly competent for the court, before her death, to have awarded to her out of the fund whatever deficiency existed in her claim for interest, and if that could have been done then, it may be done now.

"The Orphans' Court, it is true, is a tribunal of limited jurisdiction, but, in the distribution of this fund, there is nothing to restrain us from disposing of it according to the principles of equity: Woodward's Appeal, 2 Wright.

"It is contended, on behalf of the widow's administrator, that the sons contracted to pay the yearly interest, and are bound by their obligations; of this there can be no doubt. They were personally bound by their bonds, and the mortgages were liens upon their lands. It is further contended that as the balance in the hands of the trustee is the proceeds of the sales of the land bound by the mortgages, they may be applied and ought to be applied in satisfaction of the conditions of the bonds. If this view be correct, there was no occasion to obtain judgments on the bonds, and attach the money in the hands of the trustee, as urged by the counsel for the legatees or sons, which, if it could be done, is a concession of the right of the widow, not only in equity but at law. If the mortgages still remain liens upon the land there can be no doubt they could be enforced for the collection of all arrears. May it not now be held that with respect to this particular fund, though the lands are discharged from the liens of the mortgages, the latter still remain, coupled with the bonds as securities, in discharge of which the fund may be applied? The payment of the arrears due when the lands were sold would not have satisfied the conditions of the bonds, and consequently the mortgagee would have been entitled to have the proceeds of sale sequestered, at least to the extent of the penalty of the bonds, to meet the contingency of non-payment. It may be said that the decree of the Court of Common Pleas was equivalent to that disposition of the fund, and therefore treating the proceeds as the property of the sons, and not as a part of the estate of Samuel Bayley, the testator, they stand on no better ground. When land is sold under an encumbrance, the payment of the yearly interest of which is determinable at an uncertain period, the only course is to sequester the proceeds or deposit them in court, and if the income will not pay the yearly interest, the principal may be applied in its discharge, if there is no one to contest the right but the debtor and defendant in the execution. The lien of the encumbrance may be gone as to the land, but the fund will be held to satisfy the requirements of the encumbrance. Whether as legatees then under the will of the testator, or as defendants

[Bayley's Appeal.]

claiming a surplus arising from the sales, the sons and those who represent them are shut out from any right of participation in this fund until her claim is satisfied. The exceptions are sustained, and the auditor's report is remitted to him to report distribution agreeably to this opinion."

The auditor accordingly awarded to the executor of the widow the whole amount due her for arrearages, with interest, and the balance of the fund he divided between the estates of Peter and Edward. This report was confirmed. Peter, as administrator, &c., of Edward Bayley, deceased, appealed from the decree confirming the last report and assigned the decree for error.

*E. M. Lloyd*, for appellant.—The fund is the estate of Samuel Bayley, deceased, to which the legatees are not debtors, nor have they received any advancements from it; it cannot in this proceeding be reached by their creditors. The widow should have obtained a judgment and attached: Haage's Appeal, 5 Harris 181; Snyder's Appeal, 12 Casey 166. The principal in the trustee's hands could not have been called on to pay the arrearages to the widow: Spangler *v.* York County, 1 Harris 322; Spangler's Estate, 9 Id. 335. If the advance to the sons was a breach of trust, the widow concurred in it, and cannot question it: Walker *v.* Symonds, 3 Swanst. 64; Brice *v.* Stokes, 11 Vesey 326; Hill on Trustees 520; 526 and notes. The Statute of Limitations would run against this claim: Kane *v.* Bloodgood, 7 Johns. Ch. R. 110; App *v.* Dreisbach, 2 Rawle 302; Lyon *v.* Marclay, 1 Watts 275; Finney *v.* Cochran, 1 W. & S. 112; and Zacharias *v.* Zacharias, 11 Harris 453. The claim is presumed to be paid from lapse of time: Diemer *v.* Sechrist, 1 Penna. R. 420; Foulk *v.* Brown, 2 Watts 214; Levers *v.* Van Buskirk, 4 Barr 309; Eby *v.* Eby, 5 Id. 435; Sellers *v.* Holman, 8 Harris 321; Bull *v.* Towson, 4 W. & S. 557.

*H. P. Ross* and *G. Lear* for appellees.—The Orphans' Court had jurisdiction in the distribution of the fund, and it will dispose of everything connected with it: McGowin *v.* Remington, 2 Jones 63; Shollenberger's Appeal, 9 Harris 340; Barklay's Estate, 10 Barr 390. There are many circumstances tending to prove the debt was not paid, and therefore the presumption of payment is rebutted: Reed *v.* Reed, 10 Wright 239. The auditor has found as a fact that the presumption was rebutted; this is conclusive: Burroughs' Appeal, 2 Casey 264; Loomis' Appeal, 10 Harris 319; Mengas' Appeal, 7 Harris 222; Bull's Appeal, 12 Id. 286; Simmond's Estate, 7 Id. 439.

The opinion of the Court was delivered January 25th 1869, by
SHARSWOOD, J.—We have not been furnished with a copy of the will of Samuel Bayley, nor of the decree or order of the

Court of Common Pleas, by which the fund was originally paid to Dr. Phineas Jenks, as trustee. It was the principal of one-third of the estate of the testator, the interest of which was to be paid to his widow for life, and the principal, at her death, to his three sons. As the successor of Dr. Jenks was appointed by the Orphans' Court, and his account there filed, we may assume that he was a testamentary trustee. It must be admitted then that the fund in court for distribution was the estate of the testator. The original trustee, when he advanced it to the three sons, taking from them bonds and mortgages simply to secure the payment of the interest to the widow for life, in no way changed the relation which she bore to it. The sons failed in the payment of the interest, and a considerable part of the principal was lost. The remnant saved was received and held by the trustee, and was the fund to be distributed in the court below. The claimants on the funds were the executor of the widow, the assignee of one of the sons, and the administrator of the other. These two last named contend that the widow was the creditor merely of the sons for the arrearages of interest, and had no lien on the fund—that if this had been the estate of the widow to be distributed, these arrearages would be a good set-off against their claim; but that the Orphans' Court in distributing the estate of the testator have no jurisdiction to defalcate the claim of one legatee on another, against his share; and that the fund must be considered as a part of the principal to the whole of which on the death of the widow they are entitled, leaving her representative to pursue his claim by action against them or their respective estates. It does not distinctly appear in the auditor's report or any where in the record that the bonds were executed by the sons directly to the widow. If they were taken, as they ought to have been, in the name of the trustee, though conditioned to pay the interest to the widow, there would not be a loop to hang a doubt upon. The sons would be in law debtors to the trustee for the interest, as well as the principal, and he would have an unquestionable right to defalcate the amount from any claim they might have on the estate. But let us assume for argument sake, that the bonds were executed directly to the widow and in her name; ought that to vary the result? The Orphans' Court in its large and important jurisdiction over executors, administrators, guardians, and other trustees, has always been considered as a court of equity. They adopt the rules and principles of equity as their guide in the settlement of their accounts. The bonds in question ought to have been made in the name of the trustee, and if they were otherwise drawn, either by mistake or fraud, a chancellor would have decreed them to be reformed. There is no fact found by the auditor from which it can be inferred that the widow agreed to accept these bonds, and release her claim on the estate of the testator as legatee or annui-

[Bayley's Appeal.]

tant. In their nature they were merely collateral, and the law would, *prima facie*, so regard them. If then that shall be considered as actually to have been done which a chancellor would have decreed, these bonds were securities in the name of the trustee, and the sons were in equity his debtors for the arrearages of interest, which they had personally bound themselves to pay. How then can they claim to receive any part of the principal while they thus remain debtors of the estate?

As to the point that only twenty years' arrearages could be awarded to the executor because of the presumption of payment of all beyond that, that was an objection which ought to have been taken before the auditor or by exception to his amended report. If it had been, no doubt it would have been made to appear that there were facts to rebut the presumption. Both of the sons, whose representatives are now claiming, were sold out by the sheriff, and their estates, perhaps, after paying other encumbrances, did not produce enough to meet the principal of their bonds.

> Decree affirmed and appeal dismissed at the costs of the appellant.