## Morrison's Estate.

*J. C. Motter* and *J. M. McKee,* for exceptions; *Luke Baker,* contra.

BARNETT, P. J., July 28, 1928.—Under the provisions of the Act of June 7, 1917, § 12 *(a),* P. L. 447, personal property of the decedent to the amount of $500 was appraised and set apart to his widow, Maude E. Morrison, as her exemption. On behalf of Mrs. Edna F. Swartz, daughter of the intestate decedent, stepdaughter of the widow, exceptions to the appraisement were filed, alleging that certain items thereof were grossly undervalued. The items particularized in the exceptions were valued by the appraisers at sums aggregating $211.50. Jesse R. Swartz, husband of the exceptant, the only witness called by her who placed a value on all the items to which exceptions were taken, fixes their aggregate value at $740.25. Five other witnesses, including the exceptant, estimate the items respecting which they respectively

testify at approximately the same figures given by Swartz. On behalf of the widow, the two appraisers testify that the values fixed by the appraisement are just. Six other witnesses, omitting the household goods, value the livestock and farming implements at figures, the sums of which average $290.30. If to this average there be added $85.55, the aggregate of values placed on the household goods by a disinterested witness for the exceptant, who omits one of the items in this class and whose figures for the remainder of the items excepted to are the lowest given by the exceptant's witnesses, the total is $375.85.

While there is no evidence whatever to indicate fraud or deliberate unfairness on the part of the appraisers, or collusion between them and the widow, we are of opinion that such substantial undervaluation has been shown as to require the court to withhold its approval of the appraisement. The witnesses called to justify it, excluding the appraisers themselves, make the value of the questioned items nearly twice the amount at which they were appraised. It was agreed by counsel at the hearing that in case the court should conclude from the testimony that the appraisement ought not to be approved, instead of requiring a reappraisal, which, in view of the improvement of the livestock in value since the appraisement, might not be fair to the widow, the court should fix a sum which in their opinion would equitably adjust the undervaluation and direct that the administratrix, who is the widow, be charged with such sum in her account. This sum we fix at $150.

There is no agreement of counsel respecting the costs, and the power of the court to order their payment is questioned. It is true that no statute can be found authorizing the Orphans' Court to dispose of costs. Such a statute is the only source of authority in the common law courts over costs. The Orphans' Court is not a common law court, but is created by statute, and is clothed, within the sphere of its jurisdiction, with the powers of a court of equity: Com. v. The Judges of the Court of Common Pleas, 4 Pa. 301, 303; Brinker v. Brinker, 7 Pa. 53, 55; George's Appeal, 12 Pa. 260; Power v. Grogan, 232 Pa. 387, 395; Mallory's Estate, 285 Pa. 186, 190. "The Orphans' Court in its large and important jurisdiction over executors, administrators, guardians, and other trustees, has always been considered a court of equity. They adopt the rules and principles of equity as their guide in the settlement of their accounts:" Bayley's Appeal, 60 Pa. 354, 360; Steffy and Shimp's Appeal, 76 Pa. 94, 96. "It is possessed of chancery powers, and can proceed according to chancery practice to make all such decrees, interlocutory and final, as may be necessary in the administration of its appropriate duties:" Horner & Roberts v. Hasbrouck, 41 Pa. 169, 180. "In equity, the award of costs depends largely on the facts and circumstances of each particular case, and rests entirely within the discretion of the court, to be exercised upon principle and with reference to the general rules of practice:" 7 Ruling Case Law, 783. In the Orphans' Court, charged as it is with the administration and distribution of trust funds and decedents' estates, a like power, to be similarly exercised, is necessary and has frequently been held to be inherent in the court. The Orphans' Court has complete control of all questions as to costs: McCullough's Estate, 47 Legal Intell. 213, cited in 4 Brewster's Practice, 841. The distribution of the costs of an audit in the Orphans' Court is largely in the discretion of the court and will not be reversed except for clear abuse of discretion: Lusk's Estate, 150 Pa. 517. The allowance of costs in the Orphans' Court is in the discretion of the court: Toomey's Estate, 150 Pa. 535. "The Orphans' Court administers equity, and will consider all the circumstances presented in determining the question (of costs). Only in case

of an abuse of this power will its order be set aside:" Grollman's Estate, 273 Pa. 565, 567, 569.

In the present case the exceptions are shown by the testimony to have been justified, and the costs should not be imposed directly upon the exceptant, the successful party. No fault has been shown in the widow, who had the right in good faith to defend an appraisement whose integrity she had no reason to question. Others interested in the estate, though not parties to this proceeding, will profit through the initiative of the exceptant. We feel that an equitable disposition of the costs is to direct that they be paid out of the general estate as part of the expenses of the administration.

And now, July 28, 1928, it is adjudged that the goods appraised and set apart to the use of the widow were undervalued to the amount of $150, and to this extent the exceptions are sustained; for the purpose of confirming title in the widow to the property set aside to her use, the appraisement is approved and ordered filed; but it is further ordered that the widow, as administratrix, be charged in her account with the said sum of $150 as part of the personal estate of the decedent; the costs of this proceeding to be paid out of the estate as part of the expenses of administration.

From J. N. Keller, Mifflintown, Pa.