## Rae's Estate.

Argued March 26, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John A. Metz, Jr.,* with him *John A. Metz* and *Wilbur F. Galbraith,* for appellant.

*Clyde A. Armstrong,* with him *Roy G. Bostwick,* of *Thorp, Bostwick, Reed & Armstrong,* and *Kenneth G. Jackson,* for appellees.

PER CURIAM, April 13, 1942:

Walter S. Rae died in November, 1939. Letters testamentary were granted to his son and daughter, Walter S. Rae, Jr., and Mrs. Stiening. On March 20, 1940, the son's resignation as co-executor was accepted. When the executrix's account came on for audit in 1941, a claim by B. B. Byers, now the appellant, was presented and rejected by the court.

The rule is well established that a claim, which might have been presented to a party in his lifetime, will be subjected to most careful scrutiny, if presented to his personal representative; the terms of the contract must be clear, certain and definite; parol evidence offered to support it must be direct and positive: *Schwoyer's Estate,* 288 Pa. 541, 544, 136 A. 798; *Calvert v. Eberly,* 302 Pa. 152, 156, 153 A. 146; *Mooney's Estate,* 328 Pa. 273, 274, 194 A. 893. The rule was applied by the learned court below. No other conclusion than that reached was possible. There is no basis for the argument, presented to us, that the claim was dismissed for want of jurisdiction; we have no difficulty in understanding that the learned auditing judge understood perfectly that the claim was for breach of an alleged agreement to share equally in the profits hoped for in performing a contract, if obtained. As the agreement was not proved, nothing need

now be said with respect to the measure of damages claimed.

Appellant's difficulty is two-fold: (1) the evidence, such as it was, fell far short of complying with the rule stated above; * (2) the court could place very little reliance on the testimony of the resigned executor, who was the only witness to prove the alleged agreement. Apart from the failure to show its terms by evidence satisfying the rule, Mr. Rae was contradicted in essentials by Mr. Bostwick and Mr. Glock. Before resigning as executor, he pressed for collection of a debt due the estate by the claimant, Byers, without then suggesting that Byers had a claim against the estate. Mr. Glock, who represented other creditors of the estate, testified that Mr. Rae, in a conference considering creditors' claims, said, ". . . unless we 'played ball' with him he would not help us establish any of the claims of the estate or help defeat claims against the estate." Mr. Rae did not contradict that statement.

Order affirmed at appellant's costs.

---

* The learned auditing judge said: "The evidence is lacking in definiteness and clearness as to this alleged agreement between Rae and Byers. It is admitted no bid to perform the dredging work was submitted to the United States Government by Rae as intended by him and Byers. The terms of this agreement are only partly brought out by the testimony, but it is understood there was a provision that Byers's machinery and equipment were to be used in the work. The evidence is that this property belonged to the General Contracting Corporation, of which Byers was president, but it does not appear that authority was given by that company for the use of this equipment, or that Byers had been authorized to enter into contract for the use of the equipment. Rae, Jr., testified that the plan was to use the equipment of the Huffman Company in the barge canal work, but the evidence does not show that decedent had any agreement with Huffman and Company covering the use of the equipment."