Fondelier *v.* Riddle et al., Appellant.

Argued April 22, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*John M. Bennett,* of *Weimer & Bennett,* for appel-
lants.

*B. A. Sciotto,* for appellee.

OPINION BY BALDRIGE, J., July 16, 1943:

The plaintiff, Harry Fondelier, brought an action in
assumpsit to recover the sum of $1816 with interest
from January 18, 1941, for personal services rendered
to his uncle, Christ Keene, deceased, from September
15, 1937, until his uncle's death January 18, 1941, a
total of 174 weeks. The claim was based on an alleged
oral contract whereby the deceased agreed to pay the
plaintiff the sum of $10 a week, together with certain
sums of money he advanced to his uncle from time to
time.

There was insufficient proof to permit a recovery for
the money loaned. That question was withdrawn from
the jury and with it we are not concerned. There was
a verdict recovered by the plaintiff in the sum of $1500

upon which judgment was entered. This appeal followed.

The sole assignment of error is the overruling of the motion for judgment n. o. v. A presumption exists that one will pay for services rendered and accepted. Relationship alone is insufficient to overcome that presumption except in the case of parent and child: *Tustin et ux. v. Isherwood, Exr.*, 131 Pa. Superior Ct. 522, 530, 200 A. 257. The appellants concede that there was no presumption of gratuitous service because of the family relation, but assert that there existed a presumption of periodical payment for the services rendered, which the plaintiff failed to overcome by clear and satisfactory testimony, citing *Cummiskey's Estate*, 224 Pa. 509, 512, 513, 73 A. 916; *Hoefner v. Franklin Trust Co., Adr.*, 147 Pa. Superior Ct. 404, 24 A. 2d 457. It does not seem to be seriously denied that plaintiff rendered services to his uncle. The affidavit of defense rather implies that he did, but it is averred therein that he was paid for whatever he did. In any event the testimony amply established that the plaintiff took general charge of the Keene apartment, did the shopping, etc., together with performing many personal services for his uncle.

Christ Keene was an elderly man, a bachelor who had lived alone. Dr. Wesner, who attended him from November or December 1937 until his death, a period of over three years during which time he made about 100 visits, and other witnesses testified to the nature and extent of the services which leave no doubt that they were worth $10 per week.

James Barr, who from 1937 to 1939 went to Keene's home to shave him, testified that Keene told him he was not paying Harry for his services, but that "he and Harry had an understanding he was to pay Harry ten dollars a week for looking after him." Payment was "to follow his recovery, as soon as he got able to

get out, he had some money but he really didn't have access to it ...... He couldn't attend to the banking himself—go to the bank." He repeated those statements in substance on different occasions as well as expressing his appreciation for what his nephew was doing for him.

Ann May Simmons, who did Keene's washing, testified that he told her he would pay $10 a week to his nephew if he got well, which was to be over and above what he was giving him in the will. This testimony was sufficient, if believed by a jury as it was, to establish the existence of a contract.

The facts in this case are similar to those in *Gibb's Estate*, 266 Pa. 485, 110 A. 236. The court there held that the claimant did not occupy the position of a servant, as the relation between the aunt and nephew was of such a peculiar character that the presumption of payment arising under ordinary circumstances was not applicable. See, also, In re: *Estate of Martin W. Griffin*, 96 Pa. Superior Ct. 185. It is apparent that this uncle was fond of his nephew. That is manifested by the fact that he left his household goods and personal effects, as well as ¼ of his residuary estate to his nephew.

Furthermore, the alleged contract provided for payment for services rendered when the uncle recovered or at his death, so that no presumption of periodical payments arose: *Bemis et ux. v. Van Pelt, Exr. et al.*, 139 Pa. Superior Ct. 282, 292, 11 A. 2d 499. The court below, however, did not rest its decision upon the theory that there was no presumption of periodical payments, but sustained the verdict on the ground that there was sufficient evidence to establish the existence of a contract for the payment of a definite sum for services rendered and that the presumption of periodical payments was rebutted by clear, convincing evidence. They were the issues that were submitted to the

jury. Neither *Gilbraith's Estate,* 270 Pa. 288, 113 A. 361, nor *Rae's Estate,* 345 Pa. 48, 25 A. 2d 706, cited by the appellants, is analogous in their facts to those in this case.

It is true, as appellants contend, that the deceased had ample means to discharge his financial obligations as his estate approximated $10,000, and it appears that his withdrawals from a bank between September 1937 and January 1941, a total of 40 months, amounted to $2026.60, or an average of $50.67 each month. There was testimony, however, that he had to pay rent of $20, leaving $30.67 for food, medicines, heat, electricity, and other necessities. That evidence tended to support the plaintiff's contention that he was not paid. It appears further that the decedent's attending physician was not paid for his professional services covering a period from 1937 to his death; that his bill was paid thereafter by the executors of the Keene will. That testimony, together with proof of declarations made by the decedent that he intended to pay the plaintiff in the future, was sufficient to submit those matters to the consideration of the jury.

There was further contention that there was no testimony definitely establishing that the plaintiff was in attendance upon the decedent every week, or the hours and days that he performed services. There were facts and circumstances adduced which clearly justified the jury in reasonably and legitimately inferring that the plaintiff performed his part of the contract. Taking into consideration the nature of the services rendered and all the attending circumstances we think it cannot be accurately said that the jury's verdict was a mere guess or conjecture and that there was no evidence to support its findings.

The court submitted to the jury the issues involved in a charge as favorable to the defendants as they could reasonably expect. If one had grounds for complaint

to the charge it was the plaintiff for placing the burden on him of rebutting a presumption of periodical payments. All of the eight points for charge submitted by the defendants were affirmed by the court, except the last, which requested the court to direct the jury that they should find a verdict for the defendants, which was very properly refused.

A careful review of the entire testimony brings us to the conclusion that no just reason has been advanced for our disturbing this verdict. Judgment is affirmed.