## Snively Estate.

Argued December 7, 1943. Before BALDRIGE, STADT-FELD, RHODES, HIRT, KENWORTHEY and RENO, JJ. (KELLER, P. J., absent).

*Harry Aaron Takiff,* with him *Myron Jacoby* and *William A. O'Donnell,* for appellants.

*J. Ernest Nachod,* for appellee.

OPINION BY RHODES, J., March 3, 1944:

This appeal is from the allowance of a claim of appellee for services as nurse and housekeeper rendered to

decedent. The auditing judge held that decedent and appellee entered into an agreement whereby decedent was to pay appellee $25 per week with the understanding that decedent would pay appellee something on account from time to time until she could advantageously dispose of some of her securities, investments, or real estate in which her money was tied up, whereupon she would pay appellee whatever was owing to her; that the services were rendered by appellee for decedent; that appellee had been paid in part for such services; and that there was an unpaid balance of $1,750, which was allowed.

The court in banc dismissed exceptions and confirmed the adjudication.

Decedent was an elderly and infirm woman; she died on February 7, 1941. Appellee was not related to decedent by blood or by marriage; she had received hospital training as a nurse, but was not a graduate or registered nurse. The services were rendered between September, 1936, and November, 1938.

The evidence set forth the terms of the contract between the parties in a clear, certain, and definite manner. The parol evidence offered to support it was direct and positive. The rule as to such claims was therefore complied with. See *Mooney's Estate,* 328 Pa. 273, 194 A. 893; *Rae's Estate,* 345 Pa. 48, 25 A. 2d 706; *Bechdel's Estate,* 344 Pa. 139, 23 A. 2d 859. Appellants concede that appellee's employment was not gratuitous; but they contend that her salary was $5 per week, plus maintenance, that the payments made by decedent were upon that basis, and that it is presumed that such payments as made were in full for the services rendered. Cf. *Fondelier v. Riddel et al.,* 152 Pa. Superior Ct. 586, 588, 33 A. 2d 86. For such services as appellee rendered there is a presumption of periodic payments. *Bechdel's Estate,* supra, p. 140; *Bemis et ux. v. Van Pelt, Ex'r, et al.,* 139 Pa. Superior Ct. 282, 291, 11 A.

2d 499. But the presumption of payment is rebuttable, and we are of the opinion that the record sustains the finding that under the contract or agreement full payment in decedent's lifetime had not been made.

The testimony of Frank A. Norton, who knew decedent for many years, saw her frequently, and was familiar with her financial affairs, shows that decedent employed appellee in September, 1936, at $25 per week. He was present when the parties entered into this agreement. At the time, it was understood that appellee would not be paid the entire $25 each week for her services as nurse, chauffeur, and housekeeper, but that the balance owing would be paid when a more favorable market permitted decedent to liquidate some of her securities and investments. Thereafter appellee carried out her duties in accordance with the agreement. On March 23, 1937, she temporarily left the employ of decedent, but returned in May of 1937 for the same compensation, and carried on her duties as before until October 30, 1938. In January or February, 1937, decedent disposed of a mortgage which she held, but nothing was paid to appellee out of the proceeds, due to the fact that one of decedent's properties needed alterations and repairs, and a substantial sum was also used for a new automobile. He testified that appellee frequently requested payment from decedent of the money due her, but that decedent would not dispose of her holdings on account of market conditions. Appellee was referred to him by decedent following discussions of the payment of her salary. He was advised by decedent of the payments on account. He was conversant with decedent's income, which was about $200 per month, the source from which it was derived, and how it was allocated to meet the necessary expenses of decedent.

The testimony of Mr. Norton was corroborated in part by the testimony of other witnesses, and there was other testimony that appellee worked for decedent from

1936 to the fall of 1938. One witness called in behalf of appellee testified that she saw decedent give appellee a check, when she said: "That is only a little bit of money I give Mary. I cannot pay her all at one time. We have an understanding that Mary will get $25 a week. These small checks occasionally are on account. We had agreed she would accept her money in a lump sum later on." Another testified that in conversation with decedent the latter said: "You know Catherine I am supposed to pay Mary $25 a week, but Mary is easy with her money. She will give it to her relatives. I am going to give it to Mary in a lump sum." And, again, according to this witness decedent said to appellee in her presence: "Mary, I told Catherine I was giving you your money in a lump sum." These declarations of decedent, while the services were being performed, even though they were made in the absence of appellee, were competent testimony as to the contract. *Griffin's Estate*, 96 Pa. Superior Ct. 185, 188; *Heck v. Rettick*, 99 Pa. Superior Ct. 211, 214.

It was not necessary for the auditing judge to accept the testimony of the witnesses called by exceptants, and it cannot be said that he capriciously disregarded such testimony. The findings of fact of the auditing judge, who saw and heard the witnesses, were confirmed by the court in banc, and are as conclusive and binding as a verdict of a jury where there is evidence to support them. *Mooney's Estate*, supra; *Leppold's Estate*, 145 Pa. Superior Ct. 60, 64, 20 A. 2d 827.

We think the testimony was clearly sufficient to support appellee's claim. She rendered the services, and an express contract was definitely and satisfactorily established together with the terms thereof.

The assignments of error are overruled.

The decree of the court below is affirmed, at appellants' costs.