## In re Justice's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*J. Barry Colahan*, for exceptant.

*Henry M. Dubbs, Jr.*, guardian ad litem, contra.

HUNTER, J., June 30, 1944.—The trustee claims commissions under an alleged agreement with the settlor, which claim was rejected by the auditing judge. The commissions claimed are at the rate of five percent on principal of approximately $200,000, which is in excess of the usual rate, and furthermore payment is now claimed, the settlor (who was primary life tenant) having died, whereas commissions in a continuing trust are not ordinarily payable until the trust has terminated or the particular trustee's relation to it ends: Snyder Estate, 346 Pa. 615. The agreement also provides for

additional commissions on principal to be paid annually hereafter at the rate of one half of one percent on an annual revaluation of the assets. This annual charge also is unusual, because it is payable out of principal and not income, at the expense of the ultimate remaindermen, and is in excess of the amount which would ordinarily be allowed out of current income.

The trust was created on February 11, 1941, when the deed was signed by the settlor and the trustee. It was silent as to commissions, and no mention thereof was then made by the parties. On August 21, 1941, the trustee wrote to the settlor at Nantucket, Mass., where he was sojourning, submitting proposed commissions. J. Charles Murtagh, Esq., who had been settlor's attorney for many years and who represented him in the negotiations relative to the creation of the trust, also spent the month of August 1941 at Nantucket and made a social call upon the settlor, as he frequently did. The settlor stated to him that he had received the letter from the trustee, that "He had talked this matter over with his wife, and it was entirely agreeable to him and to her. He further told me that he would write to the Provident Trust Company to that effect."

Mr. Murtagh upon his return to Philadelphia communicated the substance of his conversation to the trustee.

The settlor did not write to the trustee as he had suggested he would do.

On October 23, 1941, the trustee wrote to the settlor at Thomasville, Ga., stating that it had learned from Mr. Murtagh that the settlor had approved the commission arrangements contained in the letter of August 21st. No reply was received from the settlor approving or disapproving the commissions. He died on September 30, 1942.

The exceptant trustee relies, first, upon the statement of approval made to Mr. Murtagh, and second,

upon its subsequent letter to the settlor reciting that approval.

We agree with the auditing judge that the statement to Mr. Murtagh cannot be considered as the acceptance of an offer nor the making of a contract. It was a declaration made in casual conversation, and contained no authority to communicate the settlor's approval to the trustee. The witness was asked the question: "Did he say anything to you about the statement being an authorization in itself to the Provident Trust Company to charge differently than the ordinary rate?" to which he replied "I do not remember that he did, sir."

Clearly, settlor did not believe that he was then and there making a contract, because he said that "he would write" to the trustee. This was a postponement of acceptance, and left the settlor free to change his mind. As the auditing judge well said: "The settlor himself fixed the mode and manner in which he intended to accept the offer, and anything short of a written acceptance or approval by him must be held to be insufficient to establish a contract."

The next item of evidence is the second letter written by the trustee to the settlor, in which the trustee recited that Mr. Murtagh had communicated the settlor's approval. No reply, oral or written, was made by the settlor.

No legal inference of a contract can arise out of silence unless there was a duty to speak: The Royal Ins. Co. v. Beatty, 119 Pa. 6; Trainer v. Fort, 310 Pa. 570.

It should be remembered that the trust was already in existence, the deed having been signed, the property transferred, and the trust accepted six months before. As the matter then stood, the commissions were fixed by law at the usual rates, and the subsequent proposal by the trustee was an attempt to vary those rates. A party to a contract already entered into cannot relieve himself of his obligation by the mere writing of a letter unassented to by the obligee. The latter has no duty to

speak in such circumstances. As was said by Chief Justice Shaw in Commonwealth v. Kenney, 12 Metc. 235, quoted in Trainer v. Fort, supra (p. 578):

". . . A person may sometimes be impelled to silence by the belief that his security will be best promoted thereby, and 'then no inference of assent can be drawn from that silence.' "

For reasons known only to himself the settlor did not give his assent to the proposed contract. The claim here presented, like others presented after the death of a party, must be subjected to most careful scrutiny, and the proof thereof must be definite and precise: Rae's Estate, 345 Pa. 48; Kenna Estate, 348 Pa. 214.

We agree with the auditing judge that the evidence does not meet the required standard of proof.

There are further reasons why this contract cannot be sustained, and these are involved in the exceptions taken by the guardian and trustee ad litem to the rulings of the auditing judge admitting evidence of the contract.

It is clear that a settlor, in the absence of a reserved power, may not revoke or modify a trust. He may not amend the trust instrument so as to remove trustees: Thompson, Trustee, et al. v. FitzGerald et al., 344 Pa. 90; or to exempt from legal investments: Thompson, Trustee, et al. v. FitzGerald et al., supra; In re Safe Deposit Bank of Pottsville, 19 D. & C. 695. He may not change the beneficiaries: Donnan's Trust Estate, 339 Pa. 43.

In the instant case, at the inception of the trust, the commissions were fixed by law, and the income of life tenants was subject to the deduction of commissions on income, whereas under the proposed contract all commissions are increased and the burden thereof is shifted from the income of the life tenants to the principal passing to the ultimate remaindermen. A calculation shows that these commissions over the life of the trust would amount to a substantial sum. We are of the

opinion that this contract was beyond the power of the settlor because it would have made a serious and important change in the rights of the beneficiaries as they existed at the date of the deed.

The guardian and trustee ad litem contends further that Mr. Murtagh's testimony as to the settlor's approval was not admissible.

Mr. Murtagh was attorney for the settlor in matters leading up to the creation of the trust, and the firm of Townsend, Elliott & Munson, of which he is a member, was general counsel for the trustee. He appeared as counsel for the trustee when this account was first called for audit, but withdrew his appearance before he took the witness stand.

The rule is that when an attorney represents opposing parties to a controversy communications made to him by one in the presence of the other are not confidential and privileged: Doll, Exec., v. Loesel et al., 288 Pa. 527; Henry's Trial Evidence §410. A statement made to such attorney in the absence of a party is also competent evidence when it is made with a view to having it repeated to the other: Fogg's Estate, 249 Pa. 63.

It will be recalled, however, that the statement testified to by Mr. Murtagh was made in a casual conversation in the absence of the other party, with no authority to communicate it, but with an expressed declaration by settlor that he himself would communicate it in writing.

For this reason we must regard the settlor's statement as confidential and privileged, and therefore inadmissible.

The exceptions of the trustee are dismissed, the exceptions of the guardian and trustee ad litem to the admission of evidence are sustained, and the conclusions of the adjudication dismissing the claim of the trustee are confirmed absolutely.

*Sur petition for reargument*

HUNTER, J., September 18, 1944.—In the opinion filed June 30, 1944, we did not intend to rule that a settlor, where there is a power to amend, may not change the compensation of the trustee.

In the instant case the power to revoke or amend could be exercised only "by an instrument in writing". The alleged agreement as to commissions was oral, not in writing, and even if proved would have been ineffective. A deed of trust may not be revoked or amended except as specified in the trust instrument itself: Reese's Estate, 317 Pa. 473; Lau's Estate, 27 D. & C. 157.

The petition for reargument is dismissed.