## Ziegler Estate

Before Klein, P. J., Bolger, Hunter, Lefever and Saylor, JJ.

*Frank Zal,* for exceptant.

*Joseph Skale,* contra.

SAYLOR, J., May 29, 1952.—Decedent died intestate on January 22, 1951, leaving to survive him a widow, a son and a daughter. The widow, Estelle Ziegler, had been separated from her husband for 14 years prior to his death. The son, Augustus Ziegler, and the daughter, Florence M. Mohr, were both married. Neither lived with decedent.

The widow and two children, by written agreement, share the estate equally, the widow not claiming her exemption.

At the audit, Isabella Ziegler, a sister-in-law of decedent, presented a claim for $1,280, for board and services rendered decedent from August 22, 1948, to January 5, 1951. Mrs. Ziegler died September 10, 1951. Her claim is pressed by her husband, Frederick H. Ziegler, administrator of her estate.

In 1948 decedent was taken to the hospital, suffering from malnutrition, after having lived alone in two rooms occupied by him together with his son until the latter married in 1946 and departed. Upon returning from the hospital, it is claimed by Isabella Ziegler's personal representative that decedent orally agreed with her to pay her the sum of $10 a week, upon her furnishing him with three meals a day and taking care of his laundry. Frederick H. Ziegler, claimant's widower (who testified without objection), and William Scott, her son-in-law, testified that this agreement was made in their presence.

When, because of illness, decedent was unable to go to claimant's house, about two squares away from his rooms, claimant would take decedent's meals to him. From sometime in September 1950 to the first week in December 1950 decedent actually resided at claimant's house.

Claims of the nature of that here considered are not often admitted nor readily proved. When a decedent is alleged to have received meals and services regularly during a period of two years and four months prior to his death, there is a presumption that he paid for all or a substantial portion of such meals and services during the period they were rendered. Decedent received as social security benefits payments of $57 monthly during at least the two and a half years preceding his death. The checks for these payments were cashed each month by a young child who turned over the proceeds to him.

For the rooms he occupied decedent paid $16 each month, and obtained receipts from the landlord's agent, as shown in various rent books produced in evidence. These payments were prompt and regular. There was also offered in evidence a memorandum in decedent's handwriting, showing that on September 10th and again on October 10, 1950, he paid claimant $25 for

board at her house. That was during the period he actually lived there. Other documentary evidence showed that decedent's savings account balance increased during the period covered by the claim. He deposited more than he withdrew.

In September 1950 claimant and her husband made demand on decedent for money owing by him to claimant, whereupon he stated that he would pay when he could "get himself together and go to bank". Several witnesses testified to this conversation.

In January 1951 claimant's daughter discussed the matter with decedent in the hospital, at which time he said that although he had promised her mother to pay $10 a week, he had never done so. He said that although he had never made such payments he would do so when he came out of the hospital. There was no corroboration of this testimony. However, the contract to pay at the rate of $10 per week for meals and care of laundry was made with claimant in the presence of claimant's husband and her son-in-law, William Scott.

The claim is contested by decedent's next of kin, who appear to have had little to do with him during the latter part of his life. Estelle Ziegler, his wife, stated that she had been separated from her husband for 14 years and had supported herself. She stated that occasionally she had called on her husband, sometimes to transact business with him, but usually for a meal. The son, Augustus Ziegler, stated that he had left his father's home upon getting married in 1946, and that thereafter he saw his father occasionally at his rooms, where he said his father would cook meals regularly. The daughter, Florence Mohr, stated that she had lived with her grandmother before she was married 14 years previously, and had been living in New Jersey since that time. Occasionally she called on her father in his rooms and she saw food there.

After the son's marriage in 1946 and his departure from decedent's home, it is apparent that decedent neglected himself and because of malnutrition had to be hospitalized. It is also evident that after his recovery and departure from the hospital his physical condition was not impaired by lack of proper and adequate food. His final illness was not due to malnutrition. It is also clear from the testimony that decedent was almost daily at the home of his sister-in-law, claimant, and that it was at her house and at her board that he apparently spent a great deal of time during the last part of his life. He received but occasional visits from his next of kin.

The memoranda in decedent's own handwriting, showing the two payments of $25 each in 1950, may evidence the receipt of at least $50 by claimant for board in 1950. The memoranda may also warrant the conclusion that decedent made other payments to Isabella Ziegler for board during the period her administrator claims she provided it. But with his meticulousness in procuring receipts for the rental payments and in making a memorandum of two board payments in the latter part of 1950, it might be contrariwise contended that had there been any other payments to Mrs. Ziegler he would have made a note about them. In any case these notes are self-serving declarations and cannot be included as evidence: Commonwealth Trust Company of Pittsburgh v. Hugo, 328 Pa. 116.

The testimony of the witnesses pro and contra the claim is in large part that of prejudiced parties. William Scott, claimant's son-in-law; William Ziegler, her son, and Frederick H. Ziegler, her husband, are, of course, prejudiced in favor of claimant. The widow, son and daughter of decedent naturally dislike having their inheritance diminished by payment of a claim.

However, Joseph Glashofer, a witness for claimant, is not related to any of the parties to the proceeding.

He represents a life insurance company, and for the last 14 years has visited claimant's home to service policies and collect premiums. He testified that he went to claimant's home very often three times a week, due to the fact that Mr. and Mrs. William Scott paid their premiums on different days. On those calls the witness said George Ziegler was always present, either in the house or in the immediate vicinity. He saw decedent taking his meals there. On one occasion the witness asked claimant when she was in arrears on premium payments why she hadn't paid the assistant manager when he called during the witness' vacation. Claimant then said, in the presence of decedent: "I didn't have the money." Then she said to decedent: "I can't even pay my insurance. When are you going to pay me this money you promised to pay me?" Decedent then said: "I am going to take care of it."

In the latter part of 1950 this witness was at claimant's house when, in the presence of decedent, claimant said she was not able to pay her premium as her husband was then unemployed, but "if she had the money he owed her she would be able to get straightened out to some extent."

The auditing judge, having heard the testimony and considered the evidence submitted to him, properly found that the presumption of payment had been overcome by decedent's acknowledgment of the indebtedness on several occasions and his expressed intention to make payment. This evidence was sufficient in quality and quantity to rebut the presumption of payment for all services rendered: Santori v. North Scranton Bank & Trust Company, Exec., 157 Pa. Superior Ct. 214.

The auditing judge's allowance of the claim for $1,280 is adequately supported by the evidence and has the effect of a jury's verdict.

The exception to the adjudication filed by the administrator is limited to a charge of error in allowing the claim of Isabella Ziegler. The exception is dismissed, and the adjudication is confirmed absolutely.