## Steffy and Shimp's Appeal.

1. Executors petitioned the Orphans' Court for authority to mortgage for the payment of debts; legatees without filing an answer, appeared by attorney and objected *ore tenus* to granting authority, the court awarded a rule to show cause why the authority should not be given, which was made absolute. *Held* not to be proper practice.

2. The Orphans' Court is a court of equity within its limits; its proceedings should have the substance of equitable form; by petition, answer and replication in which the requisites making the case should appear.

3. A testator devised all his real estate and gave a number of legacies; the inventory showed fifteen bonds payable to him at distant periods without interest; the amount of his debts exceeded his personal estate exclusive of the bonds; with the bonds it would pay the debts. *Held*, that under the circumstances a mortgage might be authorized, but the order should provide for everything essential to do equity among all the parties.

May 6th 1874. Before Agnew, C. J., Sharswood, Williams, Mercur and Gordon, JJ.

Appeal from the Orphans' Court of *Lancaster county* : Of May Term 1874, No. 88.

The proceeding in this case was upon the application of Samuel B. Sheaffer and others, executors, &c., of Levi Sheaffer, deceased, for authority to mortgage the real estate of the decedent for the payment of his debts.

Levi Sheaffer made his will dated October 15th 1872, and by it, after having made provision for his wife, amongst other things, devised to his son Solomon a tract of 83 acres of land, charging it to him at $160 per acre, of which he gave to Solomon $4000 as his share of the estate, and directed Solomon to pay his executors $3000, in one year after his death, and to pay them the balance in yearly payments of $450 each, the first payment to be made in one year after his death.

He gave to his son John a tract of 81 acres of land at $150 per acre, $4000 of which was to be John's share of his estate; $5000 to remain a charge on the land and the interest to be paid to his widow for life; $1000 to be paid to the executors in one year after his death and the balance to be paid to the executors in yearly payments of $300 each, the first to be made in one year after his death. He gave also a number of pecuniary legacies.

The residue of his estate, including the instalments payable by his son Solomon, and those payable by his son John, he directed should be distributed in equal shares amongst his five daughters, of whom Margaret Steffy and Lousanna Sharp were two.

By a concluding clause of his will he declared that the reason he had given his son Samuel nothing by the will, was that Samuel had been allowed a share of his estate in a farm conveyed to Samuel October 28th 1871.

The will was proved December 16th 1872, and letters testa-

mentary granted to Samuel B. Sheaffer, John J. Sheaffer and Solomon A. Sheaffer, sons of the testator.

They filed an inventory of the personal estate amounting in the whole to $11,636.09; included in the inventory were sixteen notes for $500 each, dated October 28th 1871, the first payable April 1st 1873, and one on each consecutive 1st day of April, the last being payable April 1st 1888, all without interest.

The executors filed their account which was confirmed nisi, December 15th 1873; in it they took credit for the fifteen notes of Samuel not then due, amounting to $7500. The account showed a balance of $176.49 in favor of the executors.

On the 23d of December exceptions were filed to the account; an auditor was appointed to report upon the exceptions and also to report distribution.

On the 20th of March 1874, the executors presented a petition, setting forth the will, inventory and account, and that "exceptions being filed thereto the confirmation thereof is suspended;" also that there were to be added to the account in favor of the estate, $277.61 money since collected; also payments due December 1873 by devisees of the land amounting to $4300, a bond for $500 due by Samuel B. Sheaffer April 1st 1874, leaving, after deducting the expenses of audit, &c., a balance estimated at about $4650; that the debts due from the estate of the decedent amounted to $10,064.50.

The petition set out that, the testator died seised of five tracts of land (describing them), which had been devised by the will, and concluded:—

"There being no provision made by said will for the payment of these debts, your petitioners for the purpose of paying such debts, ask for an order to mortgage the real estate aforesaid of Levi Sheaffer, deceased, for an amount not exceeding $7000."

On the presentation of the petition, H. C. Brubaker, Esq., attorney for Margaret Steffy, and A. J. Eberly, Esq., attorney for Lousanna Shimp, objected in open court, and the court thereupon granted a rule to show cause why the executors should not be allowed to mortgage the real estate as prayed for.

On the 25th of March 1874, the court made the rule absolute and authorized the executors so to mortgage the estate.

Margaret Steffy and Lousanna Shimp appealed to the Supreme Court and assigned the decree of the court for error.

*H. C. Brubaker* and *A. J. Eberly*, for appellants.—The Act of March 29th 1832, sect. 31, Pamph L. 198, 1 Br. Purd. 428, pl. 111, authorizes such mortgage where the personal estate is insufficient for payment of the debts, &c., and where on the final settlement of the administration account it appears that there are not sufficient assets to pay the balance due by the decedent. "Final settlement,"

means where the account has been confirmed absolutely : Hood on Executors 25.

There is sufficient personal estate of the decedent to pay all the debts ; saving the interest on a mortgage of $7000 would compensate the reduction by sale of Samuel's notes. The power conferred on the Orphans' Court by Act of 1832 is not discretionary : Pry's Appeal, 8 Watts 253.

*N. Ellmaker*, for appellee.—An administration account need not be settled before granting an order to mortgage or sell : Weaver's Appeal, 7 Harris 416.

Chief Justice AGNEW delivered the opinion of the court, May 18th 1874.

We cannot commend the manner in which this proceeding was conducted in the court below. These appellants appeared in court by attorney and objected to the granting of the order of mortgage, but filed no answer to the petition to bring the grounds of their objection upon the record. The petition sets forth a primâ facie ground for the order. Hence we ought not to reverse the order. The Orphans' Court is a court of equity, within the limited sphere of its operations, and the proceedings should have the substance of equitable form, though not its technical nicety. The proper mode of proceeding in that court is by petition, answer, replication, &c., in which the substantial requisites making the case should appear. But we have enough before us, to convince us that the case is peculiar and requires such an order as will protect the said parties in interest. The petition sets forth the filing of the account of the executors, and its suspension upon exceptions. It also sets forth the fact that the lands prayed to be sold were devised by the will. The paper-book of the appellants sets out the account and the will, and they are not denied in the counter statement. Under rule 13, adopted at Pittsburg, September 6th 1852, we can take the undenied history of the case to be true.

From the facts thus shown it appears that there is not a total deficiency of personal property to pay the debts, but one that is temporary only, owing to the fifteen notes of Samuel B. Sheaffer, of $500 each, being payable in a series of years, terminating in the year 1888. We are not disposed to say this is not a deficiency within the true intent of the Act of March 29th 1832, authorizing a sale or mortgage of the real estate for the payment of debts. It is a temporary insufficiency of the personal estate, which may well bring into existence the power to mortgage for the reason that the creditors are not bound to wait upon the credit given by the testator to his debtors. But it is a fact which must enter into the discretion of the court, in determining the terms and time of mortgaging the real estate. Here the lands have been devised to sons

[Steffy & Shimp's Appeal.]

at a valuation, about two-thirds of which they are required to pay to the executors, and which with the residue of the porsonalty is bequeathed to the daughters. The sons therefore are *quasi* purchasers, as to the sum paid, and in effect pay the daughters a large sum. Now as the personal estate is the primary fund to pay the debts, while the power to mortgage for the temporary insufficiency must be conceded as a right of the creditors, it should be so exercised as to do no injustice to the devisees. If the money cannot be obtained on a long loan, and in this case the loan would have to be very long to cover the period the notes of Samuel have to run, the devisees would be compelled to pay the money borrowed, or suffer the mortgage to be foreclosed. So far as we can discover from the paper-book, the order to mortgage prescribed no terms, and made no provision as to the confirmation of the report on terms to be adjudged equitable by the court. In a case so special as this, the order of the court should fully provide for everything essential to do equity among all the parties. Without meaning to prescribe the terms, as all the parties are not before us, it will be seen that it may be important to provide expressly for the application to the mortgage of the whole or a part of the sums charged on the land, or of the application of the proceeds of the notes of Samuel as they come into the possession of the administrator. It may be necessary to provide for the effect of a short term, if the money cannot be obtained on a long loan, and thereupon to reserve expressly a power to re-mortgage for the benefit of the devisees, until the money can be realized from the personalty to pay off the mortgage. It is the more important to make special provisions, as the long time to elapse before final settlement may find great changes in the administration and the parties.

With this view, we affirm the decree of the Orphans' Court, ordering a mortgage of the real estate set forth in the petition, and do order that, before the mortgage shall go into effect, a report of the same shall be made by the executors or administrators, as the case may be, and shall be subject to such order as the Orphans' Court shall lawfully make before final confirmation thereof, and the appeals are dismissed and the costs ordered to be paid out of the estate.