176   387
181   190
176   387
191   532
176   387
41SC²128

Estate of M. G. Hughes, deceased.   Appeal of Jacob G.
   Vastine and Edward F. Smith, Administrators of
   M. G. Hughes, deceased, and of Sarah H. Vastine and
   Henrietta H. Smith, Heirs and Distributees of the
   Estate of M. G. Hughes, Deceased.

*Findings of auditor—When not reversed.*

In a claim chiefly for domestic services against a decedent's estate, where
an auditor for distribution has found, on personal view and hearing of
witnesses, that there was a contract to pay for the same, and the court
below has approved the finding, the Supreme Court will not review that
finding although the proof of the contract may not be clear, and although
the court would have been as well satisfied if the auditor had put the ser-
vices in the class of those rendered voluntarily and without even implied
contract basis, though with a hope or expectation of reward or gratuity.

*Decedent's estate—Claim for domestic services—Presumption of payment
at stated periods—Evidence.*

Domestic services are presumed to be paid for at stated periods accord-
ing to the custom of the time and neighborhood, but this presumption may
be rebutted by evidence of those familiar with the financial affairs of the
decedent who are able to say that the claim had not been paid.

*Limitations—Declarations to remove bar of statute.*

Declarations of a decedent which do not identify the debt or fix the
amount will not escape the bar of the statute of limitations, even although
they amount to expressions of grateful intention to pay a definite sum.

Argued April 14, 1896.   Appeals, Nos. 97 and 158, Jan. T.,
1896, of Jacob H. Vastine and Edw. F. Smith, Admrs. of M. G.
Hughes, and by Sarah H. Vastine and Henry H. Smith, heirs
and distributees of said estate, from decree of O. C. Columbia Co.,
dismissing exceptions to report of auditor distributing said es-
tate.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM
and MITCHELL, JJ.   Reversed.

Exceptions to auditor's report.

B. Frank Zarr was appointed auditor for distribution.   Before
him W. H. Rhawn testified:

"In March, 1891, I was present at the office of Judge Hughes.
Mrs. Elizabeth Kostenbauder and James R. Bibby were there
and Judge Hughes there said to Mrs. Kostenbauder—and now

I quote his exact language—he says, 'I will never marry you, because you are too old, but I will pay you $10,000; you were as a mother to me after the death of my father.' And he turned to Bibby, and he says: 'I will pay you $5,000, you have been a good and faithful boy to me.'"

The auditor reported the following facts :

10. The claim of James R. Bibby for services rendered to M. G. Hughes, the decedent, in his lifetime, from February, 1884, to June, 1891, was presented to the auditor in the following form: "The claim of James R. Bibby for services to M. G. Hughes, the decedent, from about February, 1884, to June, 1891, for lodging, nursing, taking care of and furnishing him with victuals through many and different sicknesses, including trips to Philadelphia to care for and bringing him home, also in using my team and his team to drive him to Bloomsburg and other places to attend his business, and going myself for him, and helping him to make repairs and serving papers and waiting on him, $2,800.00."

This claim was afterward presented by the counsel for the claimant for the sum of $5,000.

The counsel for the estate presented in writing an objection and excepted to the testimony given by a large number of witnesses in support of this claim. The names of the witnesses excepted to appear in the paper presented and attached hereto. The objection and exception to this testimony is on the ground that it is incompetent and irrelevant. This objection and exception is disposed of by the auditor under his conclusions of law, and the evidence is considered in finding the facts upon this claim.

In support of the claim for services the claimant called and examined the following witnesses, who all testified to seeing the claimant perform various services and duties to the decedent in his lifetime: (naming seventeen witnesses.)

This evidence is from some of the most reputable citizens of the county, and is so direct and convincing that the auditor finds, as a matter of fact, that services were rendered by the claimant to the decedent.

From the evidence of nearly all the above-named witnesses it is clearly established that the claimant served the decedent.

in rendering services of various characters—such as hostler, driver or coachman, page or valet, clerk, nurse, looking after and taking care of the decedent when intoxicated—and in short, general servant and man-all-around.

From all the evidence before the auditor, touching the number of years during which these services were rendered, the fact is established that it covered a period of time not less than seven or eight years.

To show the value of these various services that were rendered by the claimant, some thirteen witnesses were called, some of which fixed the value by the year, some by the month, and others by the day—not making any distinction as between that of hostler, clerk, or nurse; nor was any testimony of expert witnesses given showing the value of services as nurse. Neither of these witnesses has fixed the value of these services much beyond that which an ordinary mechanic or clerk would receive per day, month, or year. Many of these witnesses have testified as to the portion of the years that were consumed— some fixing it at two thirds of a year, some at one half and others at one third. By reason of the difference in the testimony of the witnesses as to time, and by the carelessness of the claimant in not keeping, or at least not producing before the auditor any books of account, in which he kept his time, it is most difficult to ascertain the true and correct time for which compensation should be allowed. And the fact that the claimant has presented so large a claim in a lumped item covering a period of seven or eight years' service, and such service being of so various a character, would of itself be sufficient upon which to reject this claim, were it not for the fact of the large amount of testimony given before the auditor, which direct, positive and convincing evidence, the auditor would have to disregard and set aside, by enforcing that which in an ordinary case would be the rule applicable in a lump charge; but as all the elements of a well-founded claim have been shown, excepting a proper book account, it would be arbitrary and enforcing the rule too stringently if this claim was rejected on that ground.

While the declarations testified to as having been made by the decedent in reference to this claim, some of which were made in the presence of the claimant but a short time before the death of the decedent, in which declarations the decedent said

the claimant should be paid, and well paid, are insufficient to prove a contract of hiring, yet do they show that the decedent was indebted to the claimant, and whatever services had been rendered had not been paid for, therefore what was said by the decedent clearly admits the rendering of the services with a full understanding that they were not intended to be rendered gratuitously. And, further, it appears that these declarations were made from time to time while the claimant was serving the decedent in one or other of the capacities named.

These services performed as aforesaid, were in pursuance of an employment by the decedent of the said James R. Bibby about seven years before the decedent's death.

The decedent died on the 24th day of June, 1891, and within three months of his death, as well as at other times, directly and positively promised to pay the said Bibby for said services performed in pursuance of said employment, going so far as to say he would pay the claimant $5,000, and these declarations and promises were made in the presence of Bibby.

The said services were worth and of the value of $2,800, and the said decedent died indebted to said Bibby in the sum of $2,800 with interest from the 24th day of June, 1891.

The auditor's conclusions of law after finding the above facts, were as follows:

9. The counsel for the administrators of the estate objected, and excepted to the competency and relevancy of the testimony of witnesses offered in support of the claim of J. R. Bibby for $2,800 for nursing and other services of the claimant to the decedent. The evidence of these witnesses referred to is clearly incompetent and insufficient for the purpose of showing an expressed contract of hiring by the decedent, but the testimony is clearly competent to show the rendering of services, and when they were rendered and the value of the same, because these are elements that are proper and must be shown before a recovery could be had; and they are proper facts to be proved or shown before the auditor in the manner in which they were, and the testimony objected to and excepted to clearly shows these facts, and in addition to showing these facts, the declarations testified to by a number of these witnesses, as made by the decedent, in their hearing and to the presence of the claimant, are clearly evidence of the admission that services were

rendered and unpaid for, and is competent evidence to prove an indebtedness by the decedent to the claimant that was unpaid. And the same is competent, in the view of the auditor, to show that the services were not intended to be rendered gratuitously. While the law looks with disfavor upon claims that are stale and suspicious upon their face, especially when they rest on mere parol evidence or declarations or admissions of the decedent, yet this is not an inflexible rule of law that must be stringently enforced in every case, but where, as in this case, evidence is produced which is so clear and so overwhelming of the rendering of the service, its character and value, the auditor fails to see its incompetency and irrelevancy, when it is in direct line to establish the claim sought to be established.

Such evidence surely is competent when no express contract is shown and the claimant seeks to recover his claim on the ground of quantum valebat. And for this purpose, the auditor understands, the testimony was offered.

The auditor, therefore, considers all the evidence given by these witnesses, that shows the rendering of the services, its character and value, which evidence taken in connection with that given by other persons entitles the claimant to recover under an implied contract or promise to pay for the services what they were reasonably worth, having been performed at the request of the decedent, as found under the finding of facts relating to this claim.

The auditor, therefore, finds under the tenth finding of facts, that the claimant is entitled to recover upon this claim the sum of $2,100 with interest on the same from the twenty-fourth day of June, 1891, to the twenty-third day of September, 1895.

*Error assigned* was overruling exceptions to auditor's report.

*James Scarlet*, with him *Geo. H. Smith*, for appellants, cited : Kline v. Seibert, 1 Pa. 38 ; Patterson v. Neuer, 165 Pa. 66 ; Allison v. James, 9 Watts, 380; McClelland's Exr. v. West's Admr., 70 Pa. 187 ; Landis v. Roth, 109 Pa. 621 ; Palmer v. Gillespie, 95 Pa. 340 ; Carpenter v. Hays, 153 Pa. 433 ; McConnell's App., 97 Pa. 31 ; Schoch v. Garrett, 69 Pa. 144 ; Taggart's Est., 167 Pa. 467 ; Harbold's Exrs. v. Kuntz, 16 Pa. 210 ; Barhite's App., 126 Pa. 405 ; Hughes v. Keichline, 168 Pa. 115 ; York's App.,

110 Pa. 69; Thompson v. Stevens, 71 Pa. 161; Graham v. Graham's Exrs., 34 Pa. 475; Pollock v. Ray, 85 Pa. 428.

*Grant Herring,* with him *Chas. G. Barkley,* for appellee, cited: Kidder v. Boom Co., 24 Pa. 193; Miller's App., 100 Pa. 572; Neel v. Neel, 59 Pa. 347; Thompson v. Stevens, 71 Pa. 161; Smith v. Milligan, 43 Pa. 107; Gordner v. Heffley, 49 Pa. 163; Schoch v. Garrett, 69 Pa. 144; Titman v. Titman, 64 Pa. 486; Wambold v. Hoover, 110 Pa. 12; Patton v. Hassinger, 69 Pa. 315.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896:

This case belongs to the class of claims against a dead man's estate which we have had occasion several times lately to say should be scrutinized closely and required to be proved by convincing evidence. The claim of J. R. Bibby was presented in a lump sum for $2,800, with only the general dates "from about February, 1884 to June, 1891," and for most varied and miscellaneous services, without any itemization, and without book entries or other writing in support of it. And this claim, such as it is, was not presented until more than a year after the death of the decedent, although in the meantime the claimant, who was indebted to the deceased, made a settlement with the administrators, which included the payment of several small notes due by him. This circumstance alone would be very weighty against the good faith of the claim were it not explained by the testimony of Harmon that the claimant was employed by the administrators about the business of the decedent after the latter's death, and was promised by one of them, Douglass Hughes, that the mortgage on his property should be canceled, and he should be well paid for his services to the decedent besides. Without the clear testimony to this fact it would hardly be possible to sustain the claim in the face of the strong presumption against it. In regard to the latter subject the learned auditor reports that "the fact that the claimant has presented so large a claim in a lumped item, covering a period of seven or eight years' service, and such service being of so various a character, would of itself be sufficient upon which to reject this claim, were it not for the large amount of testimony given before the auditor, which direct, positive and convincing evi-

dence the auditor would have to disregard and set aside, by enforcing that which in an ordinary case would be the rule applicable in a lump charge, but as all the elements in a well-founded claim have been shown excepting a proper book account, it would be arbitrary and enforcing the rule too stringently if this claim were rejected on that ground."

The services were certainly proved, and the general value of them on a contract basis. But the proof of the contract itself is by no means so clear. We should have been as well satisfied if the auditor had put the services in the class of those rendered voluntarily and without even implied contract basis though with a hope and expectation of reward, or gratuity, which, however strong the moral obligation on the recipient, could not be enforced against him or his estate at law. The declarations of the decedent especially seem to point to the view on his part at least that the services gave rise to a claim on his gratitude but not on his purse. But the auditor on personal view and hearing of the witnesses has found there was a contract, and the court below has approved the finding. We are not prepared to say they were so clearly wrong that we should reverse their finding on a question of fact.

On one point however we are constrained to reverse. There was no sufficient evidence to escape the bar of the statute of limitations. The claim was for services of the domestic and menial class which are presumed to be paid at stated periods according to the custom of the time and neighborhood: Carpenter v. Hays, 153 Pa. 432. It would have to be reduced to a month or two, or a year at the utmost, were it not for the testimony of Mr. Rhawn whose acquaintance with the financial affairs of the decedent enabled him to say that the claimant had not been paid. But there is nothing in that testimony to carry the claimant's right beyond six years. Nor is there anything in the declarations of the decedent as testified to by any of the witnesses to have that effect. None of them identify any debt or fix any amount except the one in which he said he would pay Bibby $5,000, and this was coupled with a similar promise to Mrs. Kostenbander, and both were so plainly mere expressions of grateful intention that they are without weight in the present connection. There is nothing in the case to show that Hughes if alive and sued for this claim could not set up the

statute of limitations against part of it, and his administrators have an equal right to do so now for his estate. The auditor fixed the value of the services at $300 a year and allowed for seven years. The claim was not presented before the auditor until 1894, but suit was brought in the common pleas on July 25, 1892, and we presume the subsequent presentation in the orphans' court was by agreement, or at least tacit acquiescence, in having it settled in that tribunal. At any rate the parties went on and had it adjudicated there. The bar of the statute would therefore begin in July, 1886, and the allowance of the claim must be reduced to the period from that date to the death of the decedent in 1891.

Decree reversed and account to be restated in accordance with this opinion.