## Moore Estate.

Argued March 27, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Con F. McGregor,* for appellant.

*James L. Poth,* with him *Strassburger & McKenna,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, April 17, 1944:

This appeal is from a decree of the orphans' court disallowing a claim against a decedent's estate. The question is whether the evidence was sufficient to establish the claim.

The claim, representing cash loans in approximately $15,000., was made by the administrator of the estate of ' a mother against the estate of her deceased son. The mother died, intestate, in 1941, leaving to survive her a son (this decedent) and two daughters—one by a previous marriage. This decedent died in 1942, testate, leaving his entire estate to his widow.

At the audit of the account, the administrator of the estate of the mother presented a claim against the son's estate. It was based upon (1) judgment note for $4,000. dated December 5, 1931; (2) judgment note for $5,000. dated 1922 or 1923; (3) three I. O. U. writings, one for $200. dated December 20, 1934, another one for $200. dated July 25, 1939, and another one for $100. dated May 24, 1939; (4) a loan for $6,000. on an alleged oral agreement of May 1932; (5) judgment note for $1,000. dated July 2, 1913.

The judgment note for $4,000. dated December 5, 1931, and the judgment note for $5,000. dated either in 1922 or 1923 were secured by an assignment dated December 5, 1931, whereby decedent assigned his interest in his father's estate to his mother. The $5,000. note was not produced and no explanation was given concerning its disappearance. The assignment refers to a note *dated May 2, 1932,* a date about five months *after* the date of the assignment. The alleged oral agreement of May 1932 to repay a cash loan by the mother to decedent was not proved with proper and sufficient evidence, and on its face, is barred by the statute of limitations. Of the three papers regarded as I. O. U.'s of decedent, one of them is incomplete and means nothing; one is

barred by the statute of limitations and the other, according to the evidence, was not the property of the mother. The judgment note for $1,000. dated in 1913 is presumed by law to have been paid, and there is nothing in the testimony to rebut such presumption.

To overcome the manifest infirmities of the documentary proof submitted, claimant produced a brother-in-law of decedent, the husband of decedent's sister. This witness was a lawyer, who represented the estate of decedent's father. While the witness was not the record counsel for the estate of decedent's mother, his law partner was. The witness had full knowledge concerning, and participated in, the settlement of the mother's estate. He also had complete knowledge of, and participated in, dealings with decedent and the estates of both the father and mother. This witness and his wife (sister of decedent) undertook, by oral testimony, to explain the details of the rather complicated family financial transactions, and to establish, by admission of decedent, the existence and validity of the indebtedness herein claimed.

It will serve no useful purpose to discuss the details of these transactions. None of the testimony rose to sufficient proof that decedent at any time admitted that he was indebted to his mother at the time of her decease in any definite amount. Indeed when the sister, after the mother's death, sought to secure such an admission from her brother, the decedent, and the exact amount of the alleged indebtedness, decedent declined to make the admission. All of the testimony concerning such alleged admissions by decedent were of such vague, general and indefinite character that they are of no value to this inquiry.

This litigation appears to be an attempt to equalize a family distribution. It was testified that because decedent's father failed by his will to make an equal division among his two children and the child of his wife by a

former marriage, decedent and his sister determined to remedy the omission. The sister, in writing, assigned her interest in her mother's estate to her half sister. Both the sister and her husband testified that the decedent had orally agreed to do the same. If this claim were allowed, the effect of the sister's assignment would be to make good a large part of the alleged promise of decedent to the half sister. One of claimant's witnesses, however, had quite a different version of this contention. She testified that decedent stated that he regarded himself "morally" bound to pay his half sister something.

It is also to be observed that an assignment dated May 31, 1932 by decedent to three trustees (one of whom was the brother-in-law witness), securing indebtedness to the estates of the father and mother and others, was released and cancelled by the trustees in 1936 and the property returned to decedent. While the *indebtedness* to the mother was not released, the redelivery of pledged property is significant. When the estate of the father of decedent was settled and distribution made in 1941 the present claimant, also a fiduciary in the father's estate, and with all the present facts known to the parties and to the brother-in-law (the attorney for the estate), distributed sizeable sums in personal and real estate, without demand or effort to collect the present claimed indebtedness. What is of even greater significance, the claimant, the administrator of the mother's estate (a corporate fiduciary), *with full knowledge,* failed to include in its inventory or account all or any part of the alleged indebtedness of decedent as an asset of the estate. The testimony of the trust officer is that while he knew of the claim, he understood that the parties intended to settle the matter "outside" and that decedent was to pay the amount thereof to his half sister. Distribution was made by the administrator to the decedent of his distributive share of his mother's estate without deduction of the amount of his alleged indebted-

ness. It is unusual for a fiduciary knowingly to pay a distributive share without deduction of the indebtedness of a distributee. It is also to be observed that the estate of the mother amounted to about $5,000., whereas the alleged indebtedness *not accounted for* amounts to about $15,000. The reasons *now* given for the exclusion of the claim as an asset are not convincing.

Judge COPELAND, in his well-considered opinion, states "The failure to produce these notes or explain the failure to produce them, presents a situation wherein it is just as easy to conclude that they have been paid or cancelled as they still represent a valid claim". Also "The financial dealings of [decedent] were apparently complicated and it is not all clear that any particular sum was due from him to [the mother] at the time of her death"; and "The actions of the parties to this proceeding are inconsistent with the existence at this time of any debt. . . ." We agree with these findings of fact and conclusions of law, which are amply supported by the evidence.

The measure of proof required to prove a claim against a decedent's estate in the orphans' court is stated in *Hirst's Estate*, 274 Pa. 286, 288, 117 A. 682: "A claim against the estate of a decedent must be as definite and precise as is required to recover a debt in an action at law. While formal pleadings are dispensed with, the claimant should produce evidence showing the nature and character of the debt, its origin, the terms of the contract and the exact amount claimed to be due". See *Deal's Estate*, 321 Pa. 484, 184 A. 453.

These family transactions were between a mother and son who had lived together in complete harmony until the mother's death. The claim is very old. The first transaction occurred nearly 30 years before decedent's death. Both parties to the transaction are deceased. It has been consistently held that a claim which might have been presented to a party in his lifetime will

be subjected to most careful scrutiny. The terms of the contract must be clear, certain and definite. Parol evidence offered to support it must be direct and positive: *Gilbraith's Estate,* 270 Pa. 288, 113 A. 361; *Bangert v. Provident Trust Co.,* 314 Pa. 442, 171 A. 564; *Rae's Estate,* 345 Pa. 48, 25 A. 2d 706. This rule should be applied with even greater strictness when the claim is stale and *both* parties to the transaction are dead.

While certain of the notes are under seal, the record facts and the testimony reveal that a presumption of payment or forgiveness has been raised, which has not been overcome: compare *Conrad's Estate,* 333 Pa. 561, 3 A. 2d 697; *Smith's Estate,* 343 Pa. 539, 23 A. 2d 450.

The appeal is dismissed, and the decree affirmed at appellant's cost.