## Monson Estate.

Argued April 21, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Frederick T. Seymour,* for appellant.

*John S. Lightcap, Jr.,* for appellee.

OPINION BY ROSS, J., July 17, 1947:

Magnus Monson, alias dictus Magnus Morrison, a resident of Ligonier Township, Westmoreland County, died intestate on February 12, 1945. Letters of administration were duly issued to Frederick T. Seymour who, on December 18, 1945, filed his final account. At the audit of the account before the Orphans' Court of Westmoreland County, Priscilla Miller presented a claim for $2052.00 for "Board, washing and nursing when necessary at $1.00 per day" from "July 1, 1939—January 20, 1945". It appearing that the first 152 days of the period for which the claim was made were barred by the statute of limitations, and that the decedent was away from his home—where the services were allegedly performed—for a period of one year between 1940 and 1945, the court allowed the claim in the amount of $1388. After exceptions to the allowance of the claim were filed by the heirs of Monson and dismissed by the court below, this appeal was taken.

Claims against a dead man's estate which might have been made against him during his lifetime are subjects of just suspicion. In *Gilbraith's Estate,* 270 Pa. 288, 113

A. 361, a leading case which has been consistently followed, Mr. Justice SIMPSON stated at page 291: "We said in Carpenter v. Hays, 153 Pa. 432, 434, and have since frequently repeated, 'without variableness or shadow of turning' therefrom, that 'Claims against a dead man's estate, which might have been made against himself, while living, are always subjects of just suspicion, and our books, from Graham v. Graham, 34 Pa. 475, to Miller's Est., 136 Pa. 239 (249), are full of expressions by this court of the necessity of strict requirement of proof and the firm control of juries in such cases' ". In *Conrad's Estate,* 333 Pa. 561, 3 A. 2d 697, the Supreme Court, in reversing the auditing Judge and disallowing the claim, stated in an opinion by Mr. Chief Justice KEPHART at pp. 567 and 568: "This Court has frequently stated that where a claim which could have been made against a decedent during his life time is not presented until after his death, it is viewed with the greatest suspicion." As stated by Mr. Justice DREW in *Mooney's Estate,* 328 Pa. 273, 194 A. 893, at page 274: "We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion (Gross's Est., 284 Pa. 73, 75; Reynolds v. Williams, 282 Pa. 148, 150) and must be established by evidence 'clear, precise and indubitable': Copeland's Est., 313 Pa. 25, 29; Rocks v. Sheppard, 302 Pa. 46, 50; see also Calvert v. Eberly, 302 Pa. 152; Goodhart's Est., 278 Pa. 381." In this case, claimant does not contend that there was an express contract but relies upon parol testimony to establish her claim, and the statement of Mr. Justice GREEN in *Wall's Appeal,* 111 Pa. 460, 5 A. 220, at page 471, is applicable to claimant's contention: "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done. We

cannot too often repeat the cautions we have so frequently uttered upon this subject, and we feel that the present occasion is one which demands both their repetition and their application."

In July 1939 the claimant, her husband and their numerous children moved into the home of the decedent and resided there with him until shortly before his death when he, because of illness, was removed to a neighbor's home; and it is admitted that the claimant and her family paid no rent for their occupancy of the house during that time. McMahon, a witness for the claimant, testified that he was at the Monson home once and that Monson and the Miller family "were all eating together. I don't know who furnished the food", that he saw the claimant "serving them at the table", and in response to the question, "How may children do Mr. and Mrs. Miller have?" answered, "I don't know. Just like going in a chicken coop. I didn't count them." Another witness, Ambrose, testified that he had been in the Monson home frequently but did not know who prepared the meals, as "I wasn't there at preparing time but I saw them all eating". A third witness for the claimant, Will, testified that he was at the Monson home frequently and that the claimant "prepared all the meals" and looked after the household work. A witness for the estate, on cross-examination, testified that occasionally the claimant washed some of Monson's clothes with those of the Miller family. This constitutes the only testimony in the record relative to services rendered by the claimant, and there is no evidence in the record that shows the value of these services. A witness for the claimant testified that the usual charge for *board* in that vicinity is $10 a week, but board in common parlance includes the *furnishing of food,* and we cannot assume that the claimant furnished it. The decedent was providing the house in which the claimants large family lived and it is just as logical to assume that he furnished the food—or his share of it— as it is to assume that the claimant furnished it. Con-

sequently, in addition to only vague and indefinite testimony of the services rendered, there was no value placed thereon by any witness and, therefore, the claimant failed to meet the test as laid down in *Hirst's Estate,* 274 Pa. 286, 117 A. 682, and repeated with approval by Mr. Justice ALLEN M. STEARNE in *Moore Estate,* 349 Pa. 236, 36 A. 2d 812: " 'A claim against the estate of a decedent must be as definite and precise as is required to recover a debt in an action at law. While formal pleadings are dispensed with, the claimant should produce evidence showing the nature and character of the debt, its origin, the terms of the contract and the exact amount claimed to be due.' "

Even if we were to assume that the claimant had met this test, she is confronted with the long and well-established principle that wages for domestic services and board bills are presumed to be paid at stated intervals, and when a claim for such services is presented against a decedent's estate, extending over any length of time, the burden is on the claimant to rebut the presumption of payment. *Winfield v. Beaver Trust Co.,* 229 Pa. 530, 79 A. 138; *Cummiskey's Estate,* 224 Pa. 509, 73 A. 916; *Sears' Estate,* 313 Pa. 415, 169 A. 776. To rebut this presumption the claimant relied upon certain statements made by the decedent, not in her presence but referring to her. McMahon testified that the decedent stated to him, "I'll take care of her later on". Ambrose testified that the decedent said to him, "They are taking good care of me and I intend to take good care of them", and the witness Will testified that the decedent said to him that he (the decedent) "would take care of Mrs. Miller later for what she done for him". These statements are not sufficient to sustain a claim against the estate of the decedent or to rebut the presumption of payment. *Blumberg's Estate,* 115 Pa. Superior Ct. 310, 175 A. 741; *Roberts Estate,* 350 Pa. 467, 39 A. 2d 592; *Reed Estate,* 152 Pa. Superior Ct. 389, 33 A. 2d 231; *Donohoe's Estate,* 271 Pa. 554, 115 A. 878.

636

In this case, as stated by Judge PORTER in *Collins's Estate,* 83 Pa. Superior Ct. 31, at page 36: ". . . a presumption arose that the compensation, even if any was contemplated, had been turned over at stated periods, and this presumption cannot be overcome by vague and uncertain testimony, concerning loose declarations of a decedent of an intention to generously reward those about him." Cf. *Gilbraith's Estate,* 270 Pa. 288, 113 A. 361, supra.

The decree is reversed and the claim disallowed, costs to be paid out of the estate funds. The record is remitted with instructions to strike out the allowance to Priscilla Miller from the distribution and correct the decree accordingly.