Burr Estate.

Argued March 16, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry Bowytz,* with him *Bowytz & Bowytz,* for appellants.

*Bresci R. P. Leonard,* with him *Van der Voort, Royston, Robb & Leonard,* for appellee.

548

Opinion by Mr. Justice Allen M. Stearne, May 4, 1955:

The appeal is from the allowance by an orphans' court of a claim for nursing and housekeeping. The single question is whether or not claimant overcame the presumption of periodic payments. A majority of the court ruled that she did. One Judge dissented.

At the audit the issue was beclouded by the inapt preliminary statement of counsel for claimant concerning the nature of the claim. He stated that the claim was based upon *quantum meruit*. He did, however, refer to an alleged agreement. It is well settled that where a claim is made upon an express contract to pay a fixed sum, on failure to prove the contract, claimant may not recover on a *quantum meruit*: *Witten v. Stout*, 284 Pa. 410, 131 A. 360; *Cramer v. McKinney*, 355 Pa. 202, 204, 49 A. 2d 374; *Bemis v. Van Pelt*, 139 Pa. Superior Ct. 282, 11 A. 2d 499. An orphans' court, however, is a court in equity within the limited sphere of its operations. While it acts with procedure in equitable form, it does not so do with equity's technical nicety: *Steffy and Shimp's Appeal*, 76 Pa. 94; *McCaskey's Estate*, 307 Pa. 172, 178, 160 A. 707; *Worthington's Estate*, 6 Pa. Superior Ct. 484. We have read the testimony with care. A contract was neither proved nor attempted to be established. The learned dissenting Judge accurately states in his opinion: "In the instant case, although counsel for the claimant stated that the services, for which the claimant seeks compensation, were rendered to the decedent pursuant to her undertaking under an express contract and his undertaking to compensate her by a devise in his will, there is no testimony in the record which proves that this contract existed. . . ." Judge Cox emphasized the *issue* in this case, viz.: a strong presumption of periodic payments which it was claimant's duty to overcome.

Claimant is Catherine Marshall. Her claim is summarized by President Judge BOYLE in his opinion dismissing exceptions to the adjudication, viz.: "The claim . . . is for services rendered as a nurse and housekeeper for the decedent from August 18, 1949, to April 3, 1951. During this period the decedent suffered from a severe arthritic condition, arteriosclerosis, high blood pressure and tremors. He was an invalid. He was in pain continuously, unable to dress himself or walk without assistance. He drooled at the mouth and required constant attention. He had to be helped to and from the bathroom. He required enemas and massages. He weighed 185 pounds and had to be lifted and helped from his bed on account of his arthritic condition. The decedent lived alone. The claimant, Catherine Marshall, began to take care of him on August 18, 1949. . . . In addition to the nursing services which Mrs. Marshall performed she also prepared and served the decedent's meals, did all the washing for the household and kept the sickroom and the house neat and clean. . . ." It is unquestioned that the narrated services were performed by claimant and no attempt was made by appellants to prove *actual* payment. The single inquiry is, as above stated, whether or not claimant successfully overcame the strong *presumption of periodic payments*: *Braden Estate,* 363 Pa. 42, 68 A. 2d 734; *Sanders Estate,* 370 Pa. 208, 87 A. 2d 923, and the cases therein cited.

Decedent's former attorney was permitted to testify *without objection* that decedent had told the attorney "[claimant] should not worry that [decedent] would take care of her". Judge BOYLE correctly wrote in his opinion: "Q. Did you [i.e. the lawyer-witness] personally have any conversations with Mr. Burr with regard to whether or not Mrs. Marshall was to be paid or was being paid or was in the future to be paid for

her services? A. Well, at the very beginning—shortly after the will of Mary Burr was probated, Mr. Burr had decided to give Mrs. Marshall the house on Waite Street. . . . Q. Then you say about that time or shortly thereafter Mr. Burr wrote a will in which he left the Waite Street house to Mr. and Mrs. Marshall? A. That's right. That was shortly after. It was while Mrs. Doherty was still there. She was here for the funeral. Q. She was here for the funeral? A. She was still in Pittsburgh at the time. She was there when this will was discussed. . . . Q. Well, I understand from your remarks now, that Mrs. Doherty, the niece, participated in the discussion with reference to the plans for that will, did she? A. She did. Q. Did Mr. Burr state what his reasons were for leaving the Waite Street property to the Marshalls? A. I believe Mr. Burr stated, prior to Mary's death, Mrs. Marshall came over and helped Mary and Frank, and in consideration of her services, or her coming over, he was leaving her that house."

"Over the objection of counsel for the opponents of the claim Mr. Ruffennach [lawyer-witness] further testified: 'Q. Did he ever say anything indicating as to whether Mrs. Marshall was being paid? A. He was giving her these properties from time to time.' "

"Thereafter the opponents of the claim moved to strike out all Mr. Ruffennach's testimony relating to the proposed testamentary provision in favor of the claimant on the ground that the communications between the decedent and the witness as to the decedent's will were privileged. As to the testimony on Pages 12, 13, 14 and 15, the record shows that when Mr. Ruffennach discussed the will with the decedent Mrs. Doherty, a niece of the decedent, was present. A communication between attorney and client made in the presence of a third person is not privileged: Cridge's Estate, 289 Pa. 331, 336. As to the remainder of the testimony on

Pages 68 and 69 of the official notes of testimony there may be a question. But in similar circumstances in McCahan's Estate No. 2, 221 Pa. 186, 190, counsel for the decedent, who had drawn an earlier will which was the basis of a claim of a niece, was held to be a competent witness over the objection of the other beneficiaries that the attorney's knowledge, and therefore his testimony, was privileged, being founded upon a confidential relationship. See also Boyd v. Kilmer, 285 Pa. 533, 539, where a decedent's attorney was permitted to testify in support of a deed which disinherited decedent's daughters in favor of a stranger. The purpose intended to be served by Mr. Ruffennach's testimony in the case at bar is to rebut the presumption of payment, thus aiding the claimant to discharge the burden of proof which the law imposes upon her. The decedent had told Mr. Ruffennach that he was paying the claimant for her services by the provision made for her in his will. This testimony was corroborated by the testimony of Dr. Baczkowski, the attending physician...." Nine other witnesses testified to hearing declarations of decedent to the effect that claimant would be provided for. Considering all the testimony, we are not prepared to accept the conclusion of the dissenting Judge that the rebutting testimony constituted merely "Loose, vague, indefinite statements made by a sick, lonely old man who appreciated the kindness of his employe, and stated to these witnesses he intended, at some future time, to make a gift to her". On the contrary, we agree with the majority of the court below that this testimony, with all its necessary inferences, sufficiently established that claimant had not been paid periodically, but decedent intended to compensate her by a suitable testamentary provision.

The decree is affirmed at the cost of appellants.

DISSENTING OPINION BY MR. JUSTICE BELL:

This is another case where an appeal to our heart-strings serves unwittingly to break down the walls which for over a century have (with one exception) protected dead men's estates against claims for services rendered in decedent's lifetime which, if they were genuine, could and should have been made in decedent's lifetime.

To establish a claim against a decedent's estate which could have been presented in the lifetime of the decedent, that claim must, according to the authorities, be established by evidence which is "clear, direct and positive" or, as it was ofttimes expressed, "clear, precise and indubitable": *Mooney's Estate,* 328 Pa. 273, 194 A. 893; *Stafford v. Reed,* 363 Pa. 405, 70 A. 2d 345; *Gross's Estate,* 284 Pa. 73, 130 A. 304; *Copeland's Estate,* 313 Pa. 25, 169 A. 367; *Braden Estate,* 363 Pa. 42, 68 A. 2d 734; *Schleich's Estate,* 286 Pa. 578, 134 A. 442; *Roberts Estate,* 350 Pa. 467, 39 A. 2d 592; *Graham v. Graham's Executors,* 34 Pa. 475.

Mrs. Marshall claimed for services rendered as a nurse and housekeeper for the decedent from August 18, 1949 to April 3, 1951. She left him 4½ months before he died. There was not the slightest evidence that she ever made any claim of any kind in his lifetime or ever claimed she had not been paid until after his death; and she utterly failed to prove by decedent's admissions or otherwise—certainly there was no evidence which was clear, precise and indubitable—that she had not been paid periodically for her services during his lifetime.

An analysis of the testimony well illustrates the indefinite crazy quilt evidence produced, and demonstrates the fatal weakness of Mrs. Marshall's claim no matter which theory it is based on.

I.   Counsel for claimant stated that he proposed "to show that these services were first rendered on the understanding given by the decedent that if Mrs. Marshall would take care of him for the remainder of his life . . . he would leave her in his will the home in which she had been residing as a tenant of his, being the home on Waite Street." It was obviously for this reason that he introduced the testimony of Cyril Ruffennach, an attorney, who represented decedent in his administration of the estate of his sister, Mary Burr. Ruffennach testified that he prepared a will for decedent shortly after Mary Burr's death in August, 1949, in which he left the Waite Street house to *Mr.* and Mrs. Marshall.   When asked: "Q. Did Mr. Burr state what his reasons were for leaving the Waite Street property to the Marshalls?", he answered, "I believe Mr. Burr stated *prior to Mary's death* Mrs. Marshall came over and helped Mary and Frank [the decedent] and in consideration of her services or her coming over, he was leaving her that house."   Mr. Ruffennach was then asked the following question: "Q. Did you personally have any conversation with Mr. Burr with regard to whether or not Mrs. Marshall was to be paid or was being paid or was in the future to be paid for her services?"   Like every other witness, his answer utterly failed to prove her claim.   "A. Well at the very beginning—shortly after the will of Mary Burr was probated, Mr. Burr had decided to give Mrs. Marshall the house on Waite Street.   Q. Did he ever say anything indicating as to whether Mrs. Marshall was being paid?   A. He was giving her these properties from time to time. . . . They were gifts which were made by will."

One minute Ruffennach says Burr was leaving *Mr.* and Mrs. Marshall the Waite Street property by will; the next minute he says Burr "was giving her these

properties from time to time"; the next minute "they were gifts which were made by will." Parenthetically, Ruffennach could not find any will. Those loose, vague, conflicting statements proved exactly nothing.

Of course *an oral contract* to render personal services in consideration of Burr leaving claimant the Waite Street property is unenforceable under the Statute of Frauds: *Stafford v. Reed,* 363 Pa. 405, 408, 70 A. 2d 345. This alleged oral contract could not be enforced for the additional reasons that, as the majority Opinion correctly states, (1) "Where a claim is made upon an express contract to pay a fixed sum, on failure to prove the contract, claimant may not recover on a quantum meruit: Witten v. Stout, 284 Pa. 410, 412, 131 A. 360; Cramer v. McKinney, 355 Pa. 202, 204, 49 A. 2d 374; Bemis v. Van Pelt, 139 Pa. Superior Ct. 282, 11 A. 2d 499"; *Lach v. Fleth,* 361 Pa. 340, 64 A. 2d 821; and (2) as the majority Opinion frankly admits *"a contract was not proved."*

We agree with the majority opinion that (a) Mrs. Marshall utterly failed to prove a claim for the Waite property or for any other properties or an *agreement* to leave her a fixed or other sum by will; and consequently (b) "The single inquiry is, . . . whether or not claimant successfully overcame the *strong** presumption of periodic payments: Braden Estate, 363 Pa. 42, 68 A. 2d 734; Sanders Estate, 370 Pa. 208, 87 A. 2d 923, . . ." How strong and controlling this presumption is does not appear from the majority opinion, but does appear in a myriad of prior decisions of this Court which the majority, perhaps unintentionally but nevertheless inevitably, emasculate and nullify or make meaningless.

---

* Italics throughout, ours.

II. What was the clear, precise and convincing evidence presented by claimant to prove that she had not been paid periodically or indeed that she had not rendered the services in return for bed, board and lodging which decedent furnished her, or that she had not rendered the services in expectation of a legacy which incidentally she received in his will?

Dr. Baczkowski, the decedent's physician for 10 years, was asked: "Q. Did he say anything to you as to compensating her, as to how she was to be compensated? A. I believe on just one or two occasions a remark was made that she should not worry, that he would take care of her." Eight other witnesses, including the members of claimant's family, testified that decedent told them that he would "take care of her" or "I'll see that she is taken care of." Do these loose indefinite statements establish by *clear, precise and indubitable or convincing evidence* that decedent had not paid her periodically during his lifetime for the services she was rendering?

The authorities hold beyond any peradventure of a doubt, that those vague and indefinite words—whatever they mean—are not sufficient to establish a claim or permit a recovery. If they mean that Burr would take care of her in his lifetime, *they do not prove he failed to do so.* If they mean Burr would take care of her in his will the answer is twofold (1) he did, and (2) even if he had not, a person cannot recover for services rendered in expectation of a legacy.

In *Sanders Estate,* 370 Pa., supra, the Court, speaking through Mr. Justice STEARNE, said: "We also have reviewed the evidence and agree with the learned court below that claimant has failed to establish her claim. A claim against the estate of a decedent for board, nursing, household services, etc., must be as definite and precise as is required to recover a debt in an ac-

tion at law: Hirst's Estate, 274 Pa. 286, 117 A. 682; Moore Estate, 349 Pa. 236, 36 A. 2d 812. Claims against decedent's estate, which might have been made against him while living, are subjects of just suspicion and strict proof is required: Gross's Estate, 284 Pa. 73, 130 A. 304; Schwoyer's Estate, 288 Pa. 541, 136 A. 798; Bangert v. Provident Trust Company, 314 Pa. 442, 171 A. 564; Moore Estate, supra."

In the instant case it is, in our view, impossible to interpret the words "she will be taken care of" or "I'll see she is taken care of" as evidence "which is as definite and precise as is required to recover a debt in an action at law." Those loose, vague and indefinite words tend, *at best for claimant,* to prove that he intended to leave her something by will, which incidentally he did in the amount of $500. However, I repeat, those words can not possibly be stretched to "definitely and precisely" prove any contract or claim or prove by "clear, direct and positive" evidence or by "clear, precise and indubitable" evidence that he had not periodically paid her wages in his lifetime.

In *Braden Estate,* 363 Pa. 42, 68 A. 2d 734, appellants' claim for board and room and general care of decedent was disallowed where the evidence to overcome the presumption of periodic payments was a statement by decedent that "just as soon as she got out of there [apparently a 'sick bed'] *she intended to see that Ida and Jim got paid and paid well for what they had done for her.*" This statement is even stronger for claimant than the decedent's declaration in the instant case. The Court said (pages 45-46, 47) : "'. . . Where a claim is made for board and nursing covering a period of years, and it is not shown to have been made while the services were being rendered, nor during a later period when decedent was living elsewhere, nor until after the death of the alleged debtor, the burden of proof to over-

come the presumption is greatly increased. The presumption is not overcome by evidence of loose declarations made by decedent during his lifetime. . . . *No recovery can be had against a decedent's estate for services rendered in expectation of a legacy.*'

". . . In the instant case the auditor correctly relied upon Monson Estate, 160 Pa. Superior Ct. 631, 53 A. 2d 909, in which the Superior Court quoted the following from Moore Estate, 349 Pa. 236, 36 A. 2d 812: 'A claim against the estate of a decedent must be as definite and precise as is required to recover a debt in an action at law. . . .'

". . . If claims against decedent's estates should be allowed on such testimony, no decedent's estate would be safe from spoliation."

Another leading case and one which is on all fours with and directly controls the instant case is *Mooney's Estate,* 328 Pa. 273, 194 A. 893, where the Court dismissed a claim for wages and personal services as nurse and companion for nearly six years. This Court said: "Appellant's burden on this appeal is extremely heavy. We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion (Gross's Est., 284 Pa. 73, 75; Reynolds v. Williams, 282 Pa. 148, 150) and must be established by evidence 'clear, precise and indubitable': Copeland's Est., 313 Pa. 25, 29; Rocks v. Sheppard, 302 Pa. 46, 50; see also Calvert v. Eberly, 302 Pa. 152; Goodhart's Est., 278 Pa. 381. Furthermore, appellant must overcome a presumption that any services rendered were paid for from time to time while they continued: Gross's Est., supra; Flaccus v. Wood, 260 Pa. 161. This presumption 'will gather strength with each succeeding year, and the evidence to overthrow it must of course be correspondingly increased': Gregory v.

Com., 121 Pa. 611, 622; Gilbraith's Est., 270 Pa. 288, 291. . . .

"To remove the presumption of periodic payment . . . appellant's niece explained that she knew her aunt was not being paid because *she had to give her carfare to go to decedent's house,* and further that she heard decedent say, 'If I don't get my money and get things straightened up to pay her while I am living, I will certainly leave it to her in my will. . . .' Another witness related that decedent had said, 'She has been so kind to me *I will see she is taken care of.'* . . . The testimony was *not nearly sufficient* to support the claim. It was indefinite and unsatisfactory. *In fact, it fell far short of proving a single essential fact."*

The testimony in *Mooney's Estate* is word for word the testimony in support of Mrs. Marshall's claim and the Court's Opinion in that case is equally applicable to this case—" 'I will see she is taken care of'. . . . The testimony was not nearly sufficient to support the claim. It was indefinite and unsatisfactory. In fact, it fell far short of proving a single essential fact."

In *Gilbraith's Estate,* 270 Pa. 288, 113 A. 361, this Court rejected a claim for $4100. for board and nursing decedent for a period of five years at $15. a week. The Court, speaking through Mr. Justice SIMPSON, said (page 291) : "We said in Carpenter v. Hays, 153 Pa. 432, 434, and have since frequently repeated, 'without variableness or shadow of turning' therefrom, that 'Claims against a dead man's estate, which might have been made against himself, while living, are always subjects of just suspicion, and our books, from Graham v. Graham, 34 Pa. 475, to Miller's Est., 136 Pa. 239 (249), are full of expressions by this court of the necessity of strict requirements of proof and the firm control of juries in such cases.' And again (page 435), 'The presumption grows stronger as each period of pay-

ment goes by. In the nature of things it is less potent against a claim for two or three months' wages, than for two or three years. . . . . As said by our late Brother CLARK in Gregory v. Com., 121 Pa. 611, "the presumption will gather strength with each succeeding year, and the evidence to overthrow it must, of course, be correspondingly increased." ' Experience has demonstrated not only the wisdom of these rules, but the necessity for even more strictly adhering to them, and we propose to use the light thus cast upon our pathway."

The testimony in *Gilbraith's Estate* was far stronger than in the instant case. In that case one witness testified she heard decedent say to claimant: "Margaret, dear, I shall never forget you, I cannot do anything for you, but when I am dead and gone you will have something nice"; and again: "I heard Eliza say *she was not giving her anything now, but at the time of her death Margaret will be taken care of.*" Another witness testified: "I did hear Eliza say that . . . Mrs. Lyons [*claimant*] *would be well paid for her trouble.* 'I know I am a lot of trouble to Margaret now, *but she will get well paid.*'" Another witness testified that decedent said to her: "I do not know what I would have done if it had not been for Mrs. Lyons, *but I will pay her for her trouble, when I am passed away she will be well paid* . . . for what she has done for me." Another witness testified: "I heard her more than once say *my mother would be well paid.*" Another witness testified: "I heard Miss Gilbraith [decedent] say on several occasions that Margaret Jane . . . would be well taken care of when she was dead, she had taken care of her in her will." Mr. Justice SIMPSON said (page 294-5): "*It is clear from the foregoing that the testimony does not meet the requirements in cases of this character,* . . . . They are not clear or convincing in character, but, on the contrary, are indefinite and uncer-

tain as to time, circumstances and meaning, and justified the statement of the court below that *the evidence 'was not only insufficient to rebut the presumption of periodic payments,* but also inadequate to uphold a promise of payment at or after death'; and certainly they fall far short of the standard again set forth in Flaccus v. Wood, 260 Pa. 161, 164-5: 'In such cases the tendency of our courts has been to require strict proof: Hughes' Est., 176 Pa. 387; Bradshaw's Est., 243 Pa. 114; and to hold that mere evidence of loose declarations made by decedent during his lifetime is insufficient to support the claim*: Winfield v. Beaver Trust Co., 229 Pa. 530. . . . .' So far as any conclusion can be drawn from the statements quoted, it would be the witnesses thought claimant's services were to be recompensed by a legacy, and not otherwise; and the case, in this aspect, is within the rule that *where services are rendered in expectation of a legacy to be given, there can be no recovery against a decedent's estate, for this excludes the idea of a contractual relation between the parties*: Miller's Est., 136 Pa. 239, 250; Cummiskey's Est., 224 Pa. 509, 513."

In my judgment the majority opinion, probably unintentionally but nevertheless inevitably, (1) ignores all the foregoing cases which are on all-fours with and which directly control this claim adversely to this claimant, and (2) emasculates and effectually nullifies the principles clearly established in a myriad of decisions which have wisely protected dead men's estates for 100 years.

Mr. Justice MUSMANNO joins in this dissent.

---

\* See also *Kenna Estate,* 348 Pa. 214, 217, 34 A. 2d 617 and the many authorities cited in the very able dissenting opinion of Judge JOHN FREMONT COX in the present case.