## Farrell Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

*Bernard I. Shovlin*, for exceptant.

*David Friedman* and *Robert J. Lindsay, Jr.*, contra.

KLEIN, J., June 4, 1948.—At the audit claims were presented by August Rudolph in sums totaling $7361.85, made up in the following manner:

1. A judgment note bearing date August 12, 1946, in the sum of $666.28, with interest in the amount of $49.30, or a total of $715.59. This claim was admitted by the administratrix and awarded in the adjudication.

2. A judgment on a note bearing date October 25, 1924, in the sum of $500 against Harry A. Farrell, decedent, and David Bradley. This judgment was originally entered in Chester County and the transcript filed in Philadelphia County on February 26, 1925, in Common Pleas Court No. 3, December term, 1924, no. 14922. Interest was claimed on this

judgment in the amount of $690.92, plus a collection fee of $50, making a total claim of $1,240.92.

3. A judgment on a note bearing date October 2, 1924, in the sum of $1,100 against Harry A. Farrell, decedent, and David Bradley. This judgment was also originally entered in Chester County and the transcript also filed in Philadelphia County on February 26, 1925, in Common Pleas Court No. 3, December term, 1924, no. 14923. Interest was claimed on this judgment in the amount of $1,424.24, plus a collection fee of $110, making a total claim of $2,634.24.

4. A judgment on a note bearing date October 2, 1924, in the sum of $800 against Harry A. Farrell, decedent. This judgment was entered on February 28, 1925, in Common Pleas Court No. 4, December term, 1924, no. 15280. Interest was claimed on this judgment in the amount of $1,108.53, making a total claim of $1,908.53. This judgment was revived by sci. fa. in 1930.

5. A judgment on a note bearing date February 9, 1925, in the sum of $350 against Harry A. Farrell, decedent, and David Bradley entered on February 25, 1925, in Common Pleas Court No. 2, December term, 1924, no. 14874. Interest was claimed on this judgment in the sum of $477.57, plus a collection fee of $35, making a total claim of $862.57. This judgment was revived by sci. fa. in 1930.

The auditing judge disallowed the claims on the first two judgments. He based his conclusion on the fact that the judgments had been entered more than 20 years prior to decedent's death, and the evidence did not overcome the presumption that they had been paid. No exceptions were taken to this finding by claimant. The auditing judge allowed the claims on the latter two judgments, which had been revived in 1930. Exceptions were taken to the allowance of these claims, and they are now before us for consideration.

The testimony discloses that between the years 1923 and 1925 decedent, Harry A. Farrell, was in partnership with David Bradley in the real estate business in the City of Philadelphia. Apparently all of claimant's business transactions with decedent and his partner occurred during this period, and it should be noted that the four judgments upon which claims were made were all entered in Philadelphia County within a period of four days from February 25, 1925, to February 28, 1925.

It appears from the record that Rudolph and decedent operated a loan company. Apparently it was their practice for decedent to give Rudolph his judgment note for the money advanced to borrowers from the company. Rudolph also apparently advanced money directly to Farrell and to Bradley in connection with real estate deals and other transactions. Almost 25 years have elapsed since these transactions took place, and no one seems to have any clear recollection of their details, claimant least of all.

Where the enforcement of a claim on a specialty has been delayed for a long time, any circumstance which shows that the conduct on the part of the obligee was inconsistent with the existence of the debt as a valid claim will, taken with the delay, support the inference that the obligation has been paid; and this is especially so where the claim is against a decedent's estate. No fixed rule of substantive law or evidence can be laid down as to the scope, quality or quantity of the additional circumstances necessary to support the presumption of payment arising from a delay of less than 20 years; each case depends upon its individual circumstances: Conrad's Estate, 333 Pa. 561 (1938). Chief Justice Kephart, in reversing the lower court in this case, said at page 567:

"This court has frequently stated that where a claim which could have been made against a decedent during his lifetime is not presented until after his death, it is

viewed with the greatest suspicion. Normally, creditors and obligees are prompt to assert their claims and press them during the lifetime of the debtor. It is only natural that the courts should lend their assistance to the representatives of a decedent to compel claimants who fail to do so to establish their claims beyond reasonable doubt."

See also Moore Estate, 349 Pa. 236 (1944). The fact that judgment had been entered on the notes does not affect the operation of this rule. See Lefever's Estate, 278 Pa. 196 (1923).

Claimant's conduct has been so entirely inconsistent with his contention that these judgments are still due him, and his course of conduct has been so fraught with suspicion and lack of frankness, that we are of the opinion that his claim on the judgments must be dismissed because he waited these many years until Farrell died before he made any effort to enforce payment.

Sometime in 1926, an account was stated by claimant of the balance of decedent's obligation to him. This account was reduced to writing in claimant's own hand and retained by decedent. For a period of more than 20 years prior to the death of decedent all of claimant's efforts to collect his debt from decedent were on the basis of this account stated. He never made any demand for payment of the old judgments until many months after decedent died. We must, therefore, assume that this account is in full settlement of the claims between the parties: McLaughlin v. Harr, 99 F. (2d) 638, affirming 20 F. Supp. 27 (1938). Matured debts are discharged by a manifestation of assent in good faith by debtor and creditor to a stated sum as an accurate computation of the amount of the matured debt or debts due the creditor: Donahue v. Philadelphia, 157 Pa. Superior Ct. 124 (1944).

We are convinced from a careful study of this record that the account stated between the parties in

1926 sets forth fully the obligations of decedent to claimant and includes the four judgments upon which claim was made at the audit.

Let us study the account stated by claimant. On the first page he listed advances by him in the sum of $1,960 and receipts of $1,889.06, and showed a balance due him of $70.94. On the second page he lists additional obligations to him, including the balance of $70.94 from the first page, in the total sum of $1,171.28. We deem it significant that there are included in this account stated four items in exactly the same amounts as the four judgments upon which claims are being made, viz., $1,100, $500, $800 and $350. Counsel for the accountant was vigorous in his contention that the four judgments are all included in this account stated. Bearing in mind our Supreme Court's cautionary warning that stale claims such as we are considering are to be viewed with the greatest suspicion, let us examine claimant's own testimony with respect to these four items.

He was asked (p. 31):

"Q. Mr. Farrell has testified from the stand that the $800 in Exhibit A was paid to you. Is that true or false?

"A. $800 was paid to me? Not as I can remember."

His testimony with respect to the $350 item is as follows:

"Q. You have here Harry Farrell, $350. What is that?

"A. $350?

"Q. Yes.

"A. I can't remember that any more.

"Q. Did you take a judgment note for it?

"A. I don't believe I did."

He was examined with respect to the $500 loan:

"Q. This loan, $500, who did you loan that to? Did you write this and give it to Mr. Farrell? Why did you give it to him?

"A. I don't know how we figured this out, to be frank with you, but the loan of $500, that was loaned to some other man. I think that is a judgment that Harry Farrell had collected for me. You see, we were supposed to start a loan company."

And again, with reference to the $1,100 note:

"Q. You cannot explain this $1,100?

"A. Well, you see—

"Q. That is not the same judgment that is of record?

"A. No. I don't know—I can't tell you that; I can't remember that, because it is 25 years.

"Q. You can remember whether that is a judgment of record. This $500, is that a judgment of record?

"A. No, I don't think it is.

"Q. You don't know about the $1,100?

"A. No."

Claimant's testimony is obviously evasive and lacking in candor. He does not affirmatively state that the judgments upon which he is making claim were not included in the account which he stated of his transactions with decedent. Certainly, if he is uncertain as to whether these judgments were included in the account, we must assume, after the passage of more than 20 years, that they were included and made part of the balance set forth in the account stated, particularly in view of the fact that four items identical with the four claims he made at the audit appear in this account.

Furthermore, claimant's course of conduct during all these years appears to have been based upon the fact that the only debt due him was the balance shown in his account. His conduct has been entirely inconsistent with his present position in making claim on the four judgments. On three different occasions since 1926 he made efforts to collect his debt. On each occasion claimant's demand was for approximately the sum shown in the account stated and not for the larger amount which he now claims.

He endeavored to collect the debt in 1928. At that time decedent gave him 23 judgment notes for $50 each, aggregating $1,150, which claimant turned over to the Integrity Trust Company for collection. What has become of these notes is not clear because claimant's testimony with respect to them is jumbled and incoherent. It is perfectly clear, however, that the notes accepted by claimant from decedent were in the aggregate sum of $1,150.

Several years prior to his death decedent again went into business. Mr. Rudolph, claimant, apparently regarded this as a propitious time to try to collect his debt. He called on Lewis R. Keiffer, branch manager for the Pennsylvania Company for Banking and Trusts, and delivered to him decedent's judgment note for collection. Mr. Keiffer testified:

". . . when that note was first handed to me by Mr. Rudolph, it was around $1,160 some odd cents, I can't recall exactly."

He again referred to the note as "the $1,160, whatever it was". This note was reduced by decedent by monthly payments over a couple of years. In Mr. Keiffer's language:

"Roughly $30 or $40, but not at any regular time. It went past due many times. The notes were for a month at a time."

When decedent died the note was reduced to $666.28. In our opinion, it is important to note that the balance was in an odd amount, ending in exactly $.28. It must be more than mere coincidence that the account stated in Rudolph's handwriting shows a balance due him by the decedent of $1,171.28. It is a reasonable inference that the note given to Keiffer for collection was in the sum of $1,171.28, the amount of decedent's obligation to the claimant.

Furthermore, since decedent's entering into business gave claimant an opportunity to enforce payment of his claims, why did he limit his demand, in the lifetime

of decedent, to this one judgment note? Why did he not also turn over to Mr. Keiffer for collection his claim on the four judgments which he presented at the audit? The answer seems obvious. These judgments must have been included in the balance shown by the account he had stated.

Decedent died October 2, 1946, and letters of administration were granted to his widow on October 9, 1946. On October 25, 1946, Mr. Lindsay, one of claimant's counsel, presented a claim against the estate for the balance due on the judgment note which decedent had been paying through Mr. Keiffer. It was not until many months later, in May 1947, that the claims on the four judgments were presented. This fact of itself is suspicious and casts serious doubt on the validity of these stale claims. Normally, persons who engage counsel to present claims against a decedent's estate present all of their claims at one time. Claimant's conduct certainly suggests that the presentation of the four judgments was an afterthought.

The auditing judge was of the opinion that the revival of the two judgments in question in 1930, four years after the account between the parties was stated, raised a presumption that they were unpaid and that they are now due. We cannot agree with this conclusion. On the contrary, we think that the fact that claimant revived two judgments which total $1,150 and failed to revive the other two judgments is corroborative of the administratrix's contention that all four of the judgments were included in the account stated by claimant in 1926. If all four judgments remained unpaid, as claimant contended at the audit, why did he revive only two of them, and not all four? The probability is that he revived the two judgments totaling $1,150 as security for the admitted balance of the debt still due him by decedent. This is the only plausible inference to be drawn from the circumstances of this case.

We are therefore of the opinion that the exceptions must be sustained and the claim of August Rudolph on the two judgments dismissed.

In all other respects the adjudication is confirmed absolutely.