Klemow Estate.

Argued April 24, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Henry A. Giuliani,* with him *Rocco Falvello,* for appellants.

*Martin D. Cohn,* with him *Laputka, Bayless, Ecker & Cohn,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 4, 1963:

Louis Klemow died April 22, 1961, survived by his wife Bessie and six adult children. He left an estate of approximately $30,000. He bequeathed inter alia $1,000 to his wife, $9,000 to two named children, $500 to Azudas Israel Congregation of Hazleton, Pennsylvania, and his residuary estate to his six children.

This is an appeal * by Lucy Arman, sometimes referred to as Mrs. Arman, and by Susie Guba * from the decree of the Orphans' Court of Luzerne County,

---

* Appellants incorrectly joined in this appeal. Supreme Court Rule 20 provides: "A. Parties interested jointly, severally or otherwise in any order, judgment or decree in the same case or in joint actions or in cases consolidated for the purpose of trial or argument, may join as appellants or be joined as appellees in a single appeal where *the grounds for appeal are similar . . . .*"

In this case the grounds for appeal were not similar. Lucy Arman and Susie Guba each had a separate and unrelated claim against the Estate of Louis Klemow. The Arman claim was for rental for use of her milk bar for 18 years and board and lodging, and for care in his last illness. The Guba claim was for personal services rendered to the decedent in the last six months of his illness.

138

which disallowed several of their claims against the Estate of Louis Klemow, deceased.

## Lucy Arman's Claims

For 18 years immediately preceeding his death, Klemow and Mrs. Arman cohabited and were known in the community in which they resided as husband and wife. They occupied a five room apartment located on the second floor of the Valley Hotel, Nuremberg, Pennsylvania. This hotel was owned by Mrs. Arman. The hotel had a restaurant which was licensed to dispense alcoholic beverages, and a milk bar. Mrs. Arman contends (a) that the deceased was the sole owner of the milk bar and that he never paid rent for the occupancy of this part of her hotel which he used for his milk bar, and (b) that the deceased never paid for his apartment, or for his board and meals for 18 years, and (c) that he never paid for board, meals and personal care in the last six months of his illness.

Lucy Arman filed several claims totaling $13,916.95 against Klemow's Estate. Some of these claims were allowed and some were disallowed. Only two of her claims which were disallowed by the Orphans' Court are involved in this appeal, viz., (1) a claim in quantum meruit totaling $7,200 for "Milk Bar Rent Bed Board Room Meals Apartment and Milk Bar rent September 1943 to April 22, 1961 18 years Charge for 6 years @100.00 per month 1200 - 6 years 7200.00" and (2). another claim in quantum meruit totaling $2115. This last claim is apparently for board, meals and special care rendered decedent from November 9, 1960, the termination of his first hospitalization, to April 1, 1961, which was shortly before he reentered the hospital. Mrs. Arman's statement of claim lists this claim as follows: "While Louis Klemow was sick at his home:

. . . November 9, 1960 to April 1, 1961 141 days @ $15.00 $2115.00"

It is apparent (as the auditing Judge stated) that the first enumerated claim includes at least part of the second claim and consequently both claims will be discussed together.

The evidence in this case indicates that Louis Klemow tended bar and at times purchased supplies and sundries for both the milk bar and the restaurant. He also selected and paid for various items of furniture used in the apartment which he and Mrs. Arman occupied in a meretricious relationship of 18 years duration, and participated in the arrangements to construct a garage in the rear of the hotel.

We note that a witness for claimants, Carrie E. Singley, testified that Klemow said to her on the 3d day of April, 1961, when he was in the hospital, and cried "He wanted to give Susie $500. . . . for her taking good care of him . . . and Lucy Arman was supposed to get half of what he had . . . for the wonderful care she gave him in the years that he lived with her." We further note that Lucy Arman makes no claim to half of Klemow's Estate under this statement allegedly made by him.

The record is devoid of any evidence which would indicate that Mrs. Arman ever asked or demanded payment for rent or for board and lodging or for any services or facilities furnished decedent during the 18 years he lived with her. If there was any express or implied agreement to pay for any of the aforesaid claims, Lucy's failure to seek payment while Klemow was living is incomprehensible, particularly in view of the fact that decedent had ample money to pay his debts.

Countless decisions of this Court have held (a) that claims against a dead man's estate—if reasonable time

and circumstances would have enabled claimant to demand payment in decedent's lifetime—are viewed with suspicion and (b) that all claims against a dead man's estate must be proved by evidence which is clear, direct, precise and convincing: *Petro v. Secary Estate,* 403 Pa. 540, 543, 170 A. 2d 325. See to the same effect *Sivak Estate,* 409 Pa. 261, 185 A. 2d 778; *Religa Estate,* 409 Pa. 267, 186 A. 2d 42; *Secary Estate,* 407 Pa. 162, 180 A. 2d 572; *Consentino v. Vittoria,* 394 Pa. 538, 147 A. 2d 839. Furthermore, no recovery can be had against a decedent's estate for services rendered in expectation of a legacy: *Consentino v. Vittoria,* 394 Pa., supra; *Braden Estate,* 363 Pa. 42, 68 A. 2d 734.

In *Consentino v. Vittoria,* 394 Pa. 538, 147 A. 2d 839, this Court said (pages 542-543): ". . . In Braden Estate [363 Pa. 42] (p. 45), in discussing the quality of evidence required to sustain a claim of this nature, we said: 'In respect to the contention that the furnishing of a room and of board and care to Lizzie Braden and her acceptance of the same during her lifetime created an implied contract, and that her estate should pay a reasonable amount by way of compensation, and that the complainants should be permitted to recover on a quantum meruit basis, what this Court held in Gilbraith's Estate, 270 Pa. 288, 113 A. 361, in negativing such a claim is apposite here. In that case we said, quoting from the syllabus: "In claims for board and nursing, the presumption is that the services were actually paid for periodically, exactly as is the rule in the case of servants' wages; and this presumption cannot be overcome by vague and uncertain testimony. Claims against a dead man's estate, which might have been made against him while living, are always the subject of just suspicion, and require clear proof before they will be allowed. . . . No recovery can be had against a decedent's estate for services rendered in expectation of a legacy." ' "

We agree with the following statement of the lower Court:

"It would appear unusual to say the least to demand rental and/or board from a person with whom one shares an apartment for a period of eighteen years in a meretricious relationship. Because of the intimacy resulting in such relationship, in the absence of any demand for payment, there is strong indication that such services were rendered gratuitously. . . . because of the existence of that same relationship there is no presumption of a liability to pay for such services, nor is an implied promise or intention to pay to be presumed."

The lower Court correctly rejected these claims of Lucy Arman.

### Susie Guba's Claim

Susie Guba, the other appellant herein, filed a claim against the estate in the amount of $500 "[f]or services rendered Louis Klemow while he was sick at the Valley Hotel, Nuremberg, Pennsylvania." These services covered a period of four or five months and included bathing, dressing and walking Klemow to the lavatory, as well as the preparation and serving of tea, milk, snacks, and the performance of other personal services.

We are constrained to deny Susie Guba's claim, although we believe she did in fact perform the aforesaid services. However the lower Court correctly disallowed her claim because she failed to establish both the extent and the *reasonable value* of her services with evidence which was clear, direct, precise and convincing. Claimant Susie had one witness to prove the extent and reasonable value of her services, Carrie E. Singley. Mrs. Singley testified that she knew Mrs. Arman and Klemow for 18 years or more, that she worked

for Mrs. Arman, and also worked for Mr. Klemow on Friday nights; and from the time Klemow got out of the hospital until his death, four or five months later, she saw Susie Guba take care of him, give him baths and everything, rub his back, cut his toe nails and finger nails "and done everything like that" and she even cleaned his dirty clothes. She further testified that these services were worth more than a dollar an hour, and that Klemow told her shortly before his death "he wanted to give Susie $500 . . . for taking good care of him."

We agree with the lower Court that the extent and the reasonable value of Susie's services to Klemow were not established by evidence which was clear, direct, precise and convincing.

Decree affirmed; costs to be equally divided between Lucy Arman and the executor of the estate of Louis Klemow.