## Fronheiser Estate

*Thomas D. Leidy,* for executors.
*John Bradley, Jr.,* for objectant.

WESNER, *J.,* March 7, 1980—This matter is before the court upon objections filed by Marguerite Reinert to the first and final account of Robert S. Spayd and Ruth Phyllis Spayd, executors of the estate of Augusta M. Fronheiser. The basis of the objections is that the executors failed to schedule a payment of the sum of $1,177.20 to claimant for services rendered to and on behalf of decedent. A hearing to determine the validity of this claim was held on January 30, 1980.

## FINDINGS OF FACT

Augusta M. Fronheiser died on April 12, 1979. For several months prior to her death, decedent was physically handicapped and unable to manage her everyday affairs without assistance. This assistance was provided by claimant who, between April, 1978 and January, 1979, rendered substantial domestic and personal services to decedent. The testimony establishes that claimant performed all the household chores such as cleaning, cooking, and doing laundry. Frequently, claimant stayed overnight at decedent's house, providing her with constant care. Additionally, claimant, along with her husband provided transportation to the decedent whenever necessary.

The claimant estimates that the performance of these services consumed approximately 250 hours. In addition, claimant has separately valued a number of activities performed on behalf of the decedent. Two checks, totalling $125, were issued to claimant by decedent in January, 1979 as a partial

payment for services. No other payments were made by either decedent or the executors to the claimant.

## DISCUSSION

As there was no written contract between claimant and decedent, the claim is on a quantum meruit basis. In reviewing this case, we are mindful that claims of this nature against decedents' estates, resting entirely on parol, based largely upon loose declarations, presented generally years after the services in question were rendered and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done: Dart Estate, 426 Pa. 296, 232 A. 2d 724 (1967); Walls' Appeal, 111 Pa. 460, 5 Atl. 220 (1886). Only those claims supported by clear, precise and convincing evidence are allowed: Petruzzi Estate, 410 Pa. 554, 190 A. 2d 314 (1963). The requirement for strict proof in such actions has been deemed necessary for the protection of decedents' estates from spoliation. See Braden Estate, 363 Pa. 42, 68 A. 2d 734 (1949).

However, we think the law is also clear that where one accepts valuable services from another, the law implies a promise to pay for them and the contract implied by law, a quasi contract, may support a claim against his estate: Lach v. Fleth, 361 Pa. 340, 64 A. 2d 821 (1949). Quasi contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice: Restatement, 2d, Contracts, §5, comment b (Tent. Draft No. 1, 1973). In claims of this character, the claimant has the burden of proving the performance of the services, the decedent's ac-

ceptance of them, and their value: Dart Estate, supra; Klemow Estate, 411 Pa. 136, 191 A. 2d 365 (1963).

In this case, the evidence is sufficient to support a finding that the services in question were performed by the claimant and accepted by decedent. No testimony was presented which would lead us to a different conclusion. On the contrary, Robert S. Spayd, the executor, freely conceded that the claimant provided the decedent with many hours of care and companionship. On a few occasions, he assisted her in her duties. Such testimony supports, rather than refutes, claimant's contentions. While it is true that the claim is not supported by evidence showing the precise days on which she worked and showing exactly how many hours she worked for decedent each day, the evidence is uncontradicted that for ten months the claimant provided essential sevices to the decedent. Hence, we believe that the nature and extent of the services, as described by claimant, were reasonable in light of the decedent's condition.

Next, we turn to a consideration of the merits of claimant's contentions as to the value of the services. Generally, the law does not require that proof of claims for compensation must conform to a standard of mathematical exactness. If the facts afford a reasonable basis for calculating how much a claimant is entitled to, such evidence cannot be regarded as insufficient. See Weinglass v. Gibson, 304 Pa. 203, 155 Atl. 439 (1931). The measure of recovery is, then, the reasonable value of the services performed.

Claimant contends that the majority of the services rendered can be valued at $3.80 per hour, comparable to the prevailing wages paid to nursing assistants. In addition, the remaining tasks

performed were assigned a specific dollar value, notwithstanding the amount of time expended. Consequently, the total value of the services, according to claimant, is $1,177 (reduced by the prior payments totalling $125). We cannot conclude that recovery of this amount would be unjust. The total figure proposed by claimant is ascertainable with sufficient definiteness and does not seem excessive in relation to the amount of work performed. Our inquiry, however, does not end here.

Claimant, in order to succeed, must also overcome the presumption that any services rendered were paid for from time to time. The sole remaining question, then, is whether the claimant has rebutted this presumption of periodic payment by competent evidence: Mack's Estate, 278 Pa. 426, 123 Atl. 462 (1924); Cummiskey's Estate, 224 Pa. 509, 73 Atl. 916 (1909). In Lebo Estate, 403 Pa. 123, 126, 169 A. 2d 105 (1961), the quantum of proof necessary to rebut the presumption was described by Justice Musmanno:

"How does one prove that he was not paid, except through the assertion thereof? . . . [T]he fact that she made a claim for payment is in itself a denial of payment. The appellant executor, however, was not required to stand mute, nor was he denied access to the records which would have definitively revealed payment if there had been payment. . . .

"If [the decedent] paid [the claimant] for her services, it would certainly seem strange that over a period of six years there would not be some proof, oral or documentary, to that effect. The record is as bare as the Sahara of any such evidence."

Similarly, the record in the instant case reveals a total payment of only $125 to claimant. We cannot conclude that this amount was intended to be pay-

ment in full for ten months of continuous service. Rather, it is the opinion of this court that claimant was not compensated while decedent was alive. It should be recognized that claimant, through her own volition, may have chosen not to discuss compensation with decedent in her weakened, deteriorating condition. Under such circumstances, we conclude that the presumption has been successfully rebutted.

In short, we are satisfied that the claimant has produced sufficient facts to justify the imposition of a contract implied in law. Accordingly, we hold that the executors unjustly failed to schedule payment to the claimant for services rendered on behalf of decedent. An appropriate order will be entered.

## CONCLUSIONS OF LAW

1. Claimant has established by clear and convincing evidence all the requisite elements of a contract implied in law.

2. The reasonable value of the claimant's services was $3.80 per hour.

3. The claimant has rebutted the presumption of periodic payment by competent evidence.

## ORDER

And now, March 7, 1980, it is order that the foregoing objections to the proposed distribution are sustained. Accordingly, the executors are hereby ordered to schedule payment to Marguerite Reinert in the amount of $1,177.29 plus interest from the date of demand.

And, further, this adjudication is confirmed nisi and shall be confirmed absolutely as of course unless written exceptions have been filed within 20 days.